[No. D060499. Fourth Dist., Div. One. Apr. 20, 2012.]

In re KAYLEE H., a Person Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,
Plaintiff and Respondent, v.
JESSE H., Defendant and Appellant.

COUNSEL

William Henry Hook, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Lisa M. Maldonado, Deputy County Counsel, for Plaintiff and Respondent.

Andrea R. St. Julian, under appointment by the Court of Appeal, for Minor.

OPINION

**IRION, J.**—This appeal concerns one-year-old Kaylee H., the daughter of Jesse H. and Tonya K. Shortly after Kaylee was born, her parents placed her with her paternal great-uncle, Craig D., while they worked to resolve their substance abuse and legal problems. With the parents' consent, Craig filed for guardianship of Kaylee in probate court. He was granted temporary guardianship. The probate court referred the matter to the San Diego County Health and Human Services Agency (the Agency) to investigate whether dependency proceedings should be initiated in juvenile court.

After completing the investigation, the social worker decided not to file a Welfare and Institutions Code section 300[1] petition on Kaylee's behalf and recommended that guardianship proceed in probate court. Expressing concerns about Tonya proceeding without legal counsel in probate court, the juvenile court directed the Agency to file a section 300 petition, which the Agency did. After denying a motion akin to a demurrer and finding that the petition stated a prima facie case that Kaylee was a child described by section 300, the juvenile court dismissed the guardianship, made a true finding on the petition and removed Kaylee from parental custody.

Jesse asserts the juvenile court erred when it directed the Agency to file the section 300 petition. Jesse further contends the court erred when it denied a motion akin to a demurrer and adjudicated Kaylee a dependent of the juvenile court.

## FACTUAL AND PROCEDURAL BACKGROUND

Kaylee was born healthy in December 2010. Her parents, Jesse and Tonya, have a history of methamphetamine use and involvement with child protective services and the criminal justice system. At the time of Kaylee's birth, the parents were involved in a dependency proceeding concerning their daughter, S.H., pending a section 366.26 hearing.[2] On January 13, 2011, Jesse and Tonya placed one-month-old Kaylee in the care of Craig, who petitioned the probate court for guardianship with the parents' consent. The probate court appointed Craig as Kaylee's temporary guardian.

On April 11, a guardianship investigator, citing the parents' legal problems and substance abuse issues, reported that the guardianship was requested due to the parents' inability to care for Kaylee and to meet her needs on a daily

---

[1] Unless otherwise indicated, further statutory references are to the Welfare and Institutions Code.

[2] The juvenile court terminated parental rights as to S.H. on January 24, 2011.

basis. The investigator reported that Craig and his wife (together, the D.'s) did not have any criminal or child protective history, and there were no specific concerns about Craig's suitability as guardian.

The probate court referred the case to the Agency to investigate a potential dependency pursuant to Probate Code section 1513. The social worker investigating the matter decided not to file a section 300 petition and instead recommended that permanent guardianship be established for Kaylee in probate court.

On July 20, the juvenile court reviewed the decision of the social worker not to file a section 300 petition. (§ 331.) The juvenile court directed the social worker to file a petition on Kaylee's behalf and stated that if, after receiving the advice of counsel, the parties agreed that probate guardianship was the "best route . . . for Kaylee," it would then be appropriate to dismiss the section 300 petition at the jurisdictional/dispositional hearing and proceed in probate court.

On August 8, the Agency filed a petition under section 300, subdivision (b) alleging the parents used methamphetamine from 2009 to 2010, and after Kaylee was born, they placed her in the care of Craig, who was seeking guardianship. The Agency recommended that the juvenile court dismiss the section 300 petition and allow the matter to proceed in probate court. The social worker reported that Kaylee was in good health and was clearly bonded to Craig. Her parents were "very much in favor" of establishing a guardianship. Tonya said she understood the dependency system because she "grew up in it" and had participated in S.H.'s case. She never abused or neglected Kaylee and ensured that Kaylee had adequate care while she was incarcerated. Tonya was incarcerated until October 27, 2011. She was attending Narcotics Anonymous (NA) meetings and other classes.

Jesse was in a court-ordered outpatient rehabilitation program. He lived with his grandparents near his uncle, and saw his uncle and Kaylee almost daily. Jesse said Kaylee had been in the D.'s care for seven months. They were taking very good care of her, and she was bonded with them.

At the August 9 detention hearing, Jesse, through his attorney, challenged the legal sufficiency of the petition (motion akin to a demurrer, or motion). Tonya joined in the motion. Minor's counsel opposed the motion on the ground she had not yet completed her due diligence investigation. The Agency submitted on the motion.

The juvenile court denied the motion akin to a demurrer, stating the petition alleged the parents used methamphetamine and placed the child in the care of another person, who was seeking guardianship of the child, and the juvenile court had ordered the Agency to initiate the proceedings. If true, the allegations demonstrated there was a substantial risk of future harm to the child if the child was to be in the care of her parents.

The juvenile court received a form entitled "Letters of Temporary Guardianship or a Conservatorship" that was filed with the clerk of the superior court on June 15, 2011. The document indicated that Craig was Kaylee's temporary guardian, and the letters of guardianship would expire on August 17. The juvenile court made a prima facie finding on the petition, terminated the temporary guardianship without providing notice to the parties as required under sections 728 and 294, and ordered the Agency to detain Kaylee with the D.'s.

In reports prepared for the jurisdictional and dispositional hearing, the Agency recommended that the juvenile court sustain the section 300 petition and offer family reunification services to the parents. It also stated it was in agreement to grant guardianship of Kaylee to Craig.

The social worker reported that Tonya started using methamphetamine in 1995. Her longest period of sobriety was during a two-year prison term. After her release, Tonya was sober for approximately 15 months in 2008 and 2009 but relapsed when she became homeless. When Tonya discovered she was pregnant with Kaylee, she enrolled in an inpatient substance abuse treatment program. She relapsed in January 2012 after signing Kaylee's guardianship papers. Tonya planned to enter an outpatient substance abuse program when she was released from jail in October.

Tonya believed that it was in Kaylee's best interests to be with the D.'s and wanted to proceed with the probate guardianship. The D.'s had cared for Kaylee since she was one month old and did a "fantastic job." Tonya agreed to the guardianship because she wanted to protect her child. Tonya said she always intended to do the right thing but made mistakes. She did not want Kaylee to suffer because of her mistakes.

Tonya told the social worker that she planned to live with the D.'s when she was released from custody. The social worker informed her that she would not be able to live with the D.'s because Kaylee was placed there. Tonya said she would make alternate living arrangements. She was willing to participate in family reunification services if they were offered to her.

Jesse was participating in a drug court program, which required him to attend NA meetings, drug test daily, obtain employment and observe curfew from 10:00 p.m. to 6:00 a.m. He wanted his uncle and aunt to be Kaylee's guardians. Jesse did not want to participate in juvenile court services. He wanted Kaylee to stay in a stable home with the D.'s. He was visiting her and planned to continue to visit her.

Craig was open to adopting Kaylee but wanted the parents to have the opportunity to reunify with her. He was uncertain whether either parent would ever be able to demonstrate to the juvenile or probate court that they were sufficiently stable to regain custody of Kaylee. Craig commended the parents for making arrangements to protect Kaylee, and said he was focused on her stability and giving her a good upbringing.

The jurisdictional and dispositional hearing was held on September 1. The court admitted the Agency's reports in evidence. The parents proceeded by way of "slow plea." The court sustained the petition, removed Kaylee from parental custody and placed her with the D.'s under a plan of family reunification services.

## DISCUSSION

### A

### *The Contentions on Appeal*

Jesse contends the juvenile court erred when it ordered the Agency to file a dependency petition and denied his motion akin to a demurrer. He argues there was no indication that Kaylee was a child described by section 300. Jesse also contends there was no substantial evidence to support the juvenile court's jurisdictional findings under section 300, subdivision (b). The Agency and minor's counsel concur with Jesse's arguments.[3]

Before we address appellant's contentions, we describe the statutory framework that governs a referral from the probate court to the social services agency to investigate potential dependencies, the juvenile court's authority to order the social worker to file a section 300 petition when the social worker investigating the dependency has declined to initiate dependency proceedings, and the termination or modification of a probate guardianship by the juvenile court.

---

[3] The Agency and the child did not appeal from the juvenile court's findings and orders. Jesse did not file a reply brief, and does not join with the arguments of the Agency and minor's counsel.

B

*Statutory Framework*

■ Under Probate Code section 1510, subdivision (a), in appointing a guardian of a person, the court is governed by Family Code sections 3020 et seq. and 3040 et seq., relating to custody of a minor. Where the guardianship action is contested, "a court cannot award custody to a nonparent unless it finds 'that granting custody to a parent would be detrimental to the child and that granting custody to the nonparent is required to serve the best interest of the child.' (Fam. Code, § 3041.)" (*Adoption of Daniele G.* (2001) 87 Cal.App.4th 1392, 1401 [105 Cal.Rptr.2d 341].) A finding of detriment does not require any finding of unfitness of the parents. (Fam. Code, § 3041, subd. (c).) "Unfitness" is defined by section 300. (Prob. Code, § 1513, subd. (c).)

■ When a relative files a petition for the appointment of a guardian of a minor, as here, a court investigator is required to make an investigation and file a report and recommendation with the court, unless waived by the court. (Prob. Code, § 1513, subd. (a).) This report includes, at minimum, a social history of the guardian, a social history of the proposed ward, the relationship of the proposed ward to the guardian, the circumstances whereby physical custody of the ward was acquired by the guardian, the anticipated duration of the guardianship, and the plans of both natural parents and the proposed guardian for the stable and permanent home for the child. (*Ibid.*)

■ If the investigation finds that any party to the proposed guardianship alleges the minor's parent is unfit, the probate court must refer the case to the social services agency designated to investigate potential dependencies. (Prob. Code, § 1513, subd. (c); *Guardianship of Christian G.* (2011) 195 Cal.App.4th 581, 603–604 [124 Cal.Rptr.3d 642] (*Christian G.*) [referral to social services agency for dependency investigation applies to any parent whose child allegedly falls within the jurisdiction of the juvenile court under § 300]; but see *Adoption of Myah M.* (2011) 201 Cal.App.4th 1518, 1534–1536 [135 Cal.Rptr.3d 636] (*Myah M.*) [referral to social services agency for a dependency investigation is not necessary when the probate guardianship is established pursuant to a stipulation after mediation].)[4] Guardianship proceedings shall not be completed until the investigation required by sections 328 and 329 is completed and a report is provided to the court in which the guardianship proceeding is pending. (Prob. Code, § 1513, subd. (c).)

---

[4] Here the appropriateness of the referral by the probate court to the social worker for a dependency investigation under Probate Code section 1513, subdivision (c) is not at issue.

■     Section 328 directs the social worker to immediately make any investigation he or she deems necessary to determine whether child welfare services should be offered to the family and whether proceedings in juvenile court should be commenced. If the social worker determines that it is appropriate to offer child welfare services to the family, the social worker is required to make a referral to those services. (§ 328; see § 16500 et seq.)

Section 329[5] directs the social worker to immediately investigate the referral as he or she deems necessary to determine whether proceedings in the juvenile court should be commenced. If the social worker does not file a petition in the juvenile court within three weeks after the application, the social worker shall immediately inform the applicant of the decision and reasons not to proceed further.

■     If the social worker has not filed a petition within three weeks, the juvenile court has the authority under section 331 to *independently* review the social worker's decision not to file a section 300 petition.[6] (*In re M.C.* (2011) 199 Cal.App.4th 784, 813–815 [131 Cal.Rptr.3d 194] (*M.C.*) [juvenile court's authority to direct the social worker to file a § 300 petition does not violate the doctrine of separation of powers under art. III, § 3, of the Cal. Const.].) A section 300 petition initiates juvenile court proceedings. Once a petition has been filed under section 300, the juvenile court has exclusive jurisdiction of all issues regarding custody and visitation of the child, and all issues and actions regarding paternity of the child. (§ 304; Cal. Rules of Court, rule 5.510(c).)

■     With proper notice,[7] the juvenile court may terminate or modify a probate guardianship at any regularly scheduled hearing held in proceedings

---

[5] Section 329 states: "Whenever any person applies to the social worker to commence proceedings in the juvenile court, the application shall be in the form of an affidavit alleging that there was or is within the county, or residing therein, a child within the provisions of Section 300, and setting forth facts in support thereof. The social worker shall immediately investigate as he or she deems necessary to determine whether proceedings in the juvenile court should be commenced. If the social worker does not take action under Section 330 and does not file a petition in the juvenile court within three weeks after the application, he or she shall endorse upon the affidavit of the applicant his or her decision not to proceed further and his or her reasons therefor and shall immediately notify the applicant of the action taken or the decision rendered by him or her under this section. The social worker shall retain the affidavit and his or her endorsement thereon for a period of 30 days after notifying the applicant." (See Stats. 1991, ch. 1203, § 4, p. 5867 [renumbering § 330 as § 301].)

[6] We further discuss the standards and procedures of the juvenile court's independent review under section 331 in Discussion, part C, *post.*

[7] The notice requirements of section 294, which also govern notice for a section 366.26 hearing, apply to section 728 proceedings. Section 294 requires notice to be completed at least 45 days before the hearing date at which the guardianship is proposed to be terminated or modified. (§ 294, subd. (c)(1).)

to declare the minor a dependent child or at any subsequent hearing concerning the dependent child. (§§ 728, subd. (a), 294.)[8] On motion of the social worker, guardian or minor's counsel, a hearing under section 728 may be held simultaneously with any regularly scheduled hearing. A probate guardianship may be terminated on a showing that termination is in the best interests of the child. (*In re Angel S.* (2007) 156 Cal.App.4th 1202, 1208 [67 Cal.Rptr.3d 792]; *Guardianship of L.V.* (2006) 136 Cal.App.4th 481, 491 [38 Cal.Rptr.3d 894] [sole criterion for terminating a probate guardianship is the child's best interests]; see Prob. Code, § 1601.)

Having set forth the relevant statutory framework, we address the legal principles and procedures that govern the juvenile court's independent review of the social worker's decision not to file a section 300 petition, and the standard of appellate review of the juvenile court's determination under section 331.

C

*Legal Principles Governing the Juvenile Court's*
*Independent Review Under Section 331 and Standard*
*of Review*

■  The juvenile court is a superior court of special jurisdiction arising from juvenile court law. (*In re Alexandria M.* (2007) 156 Cal.App.4th 1088, 1098 [68 Cal.Rptr.3d 10].) The juvenile court is vested with jurisdiction to make only those limited determinations authorized by the legislative grant of special powers under the Welfare and Institutions Code, and those determinations that are incidentally necessary to the performance of those functions. (*In re Alexandria M.*, at p. 1098; *In re Lisa R.* (1975) 13 Cal.3d 636, 643 [119 Cal.Rptr. 475, 532 P.2d 123].)

■  The purpose of the dependency system is to provide "maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm." (§ 300.2.) The juvenile court's authority under section 331 to review a social worker's decision not to file a section 300

---

[8] Section 728 does not distinguish between temporary and permanent probate guardianships. (But see Prob. Code, § 2257, subd. (b) [the court, with or without notice, may for good cause order that the time for the termination of the powers of the temporary guardian be extended or shortened pending final determination by the court of the petition].)

petition "simply provides some additional measure of protection to ensure an abused or neglected child does not slip through the cracks." (*M.C., supra,* 199 Cal.App.4th at p. 813.)

Section 331 states: "When any person has applied to the social worker, pursuant to Section 329, to commence juvenile court proceedings and the social worker fails to file a petition within three weeks after the application, the person may, within one month after making the application, apply to the juvenile court to review the decision of the social worker, and the court may either affirm the decision of the social worker or order him or her to commence juvenile court proceedings."[9]

■ Under section 331 the juvenile court makes an independent assessment to determine *whether there is a prima facie showing the child comes within section 300 and whether a dependency petition is required to protect the child.*[10] (Cf. *M.C., supra,* 199 Cal.App.4th at p. 814.)

In determining whether there is the requisite showing, the juvenile court must receive and consider any affidavit filed under section 329 and the social worker's endorsement stating his or her reasons for declining to file a petition. In addition, the juvenile court may consider evidence in the form of investigative reports by the social worker, declarations and, if necessary, witness testimony. (*M.C., supra,* 199 Cal.App.4th at p. 813.) After reviewing the affidavits and other evidence, the juvenile court may either affirm the social worker's decision not to commence juvenile court proceedings or order the social worker to file a section 300 petition on behalf of the child. (§ 331; *M.C.,* at pp. 807, 814–815.) In so doing, the juvenile court should give due consideration to the social worker's determination and may properly rely upon the Agency's expertise for guidance. (*Id.* at p. 814.)

In reviewing the social worker's decision not to file a section 300 petition, the juvenile court exercises its discretion to either affirm the social worker's decision or to order the social worker to file a section 300 petition. The scope

[9] In cases such as this one, where there is not a private party seeking review of the social worker's decision under section 329, the probate court is by implication the person who has applied to the social worker to commence juvenile court proceedings. (§§ 329, 331; see Judicial Council of California form JV-215, "Application to Review Decision by Social Worker Not to Commence Proceedings" (eff. Jan. 1, 2001).)

[10] We do not believe the factors cited in *M.C., supra,* 199 Cal.App.4th at page 814, footnote 22, apply to the juvenile court's decision to order the social worker to file a section 300 petition. Those factors are set forth in the context of rules governing the filing of a dependency or delinquency petition when a child appears to come within the description of section 300 and either section 601 or 602, and the social worker must decide whether to file a petition under section 300 or 601 *or* refer the matter to the prosecuting attorney to file a petition under section 602. (Cal. Rules of Court, rules 5.512, 5.514, 5.516.)

of discretion always resides in the legal principles governing the subject of the action. (*In re Baby Girl M.* (2006) 135 Cal.App.4th 1528, 1536 [38 Cal.Rptr.3d 484], citing *City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1297–1298 [255 Cal.Rptr. 704].) Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and accordingly constitutes an " ' "abuse" ' " of discretion. (*In re Baby Girl M.*, at p. 1536.)

D

*The Juvenile Court Abused Its Discretion When It Did Not Consider Whether a Section 300 Petition Was Necessary to Protect Kaylee*

We address Jesse's contention that the juvenile court erred when it ordered the Agency to file a dependency petition, after setting forth additional relevant facts.

On July 20, the juvenile court reviewed the report of the social worker ordered by the probate court to investigate a potential dependency for Kaylee. (Prob. Code, § 1513; Welf. & Inst. Code, § 331.) In that report, the social worker stated she had decided not to file a section 300 petition, but was instead recommending that a permanent guardianship be established for Kaylee in probate court.

The juvenile court ordered the social worker to file a section 300 petition on Kaylee's behalf, finding that it was more appropriate to proceed in juvenile court than in probate court. The court gave three reasons for its decision. First, the juvenile court had the mechanisms to try to help parents reunify with their children. Second, if family reunification did not occur, guardianship was not the preferred permanency plan for a child of Kaylee's age. Third, Tonya did not have access to court-appointed legal counsel in probate court to respond to the allegation of parental unfitness, as discussed in *Christian G., supra,* 195 Cal.App.4th at pages 600–601 and 610.[11]

---

[11] The juvenile court was apparently operating under a misapprehension that this case was controlled by *Christian G.,* in which the reviewing court held that a probate court is required by statute to refer the matter to the social worker whenever a party alleges that a parent is unfit. (*Christian G., supra,* 195 Cal.App.4th at p. 603.) This case is not controlled by *Christian G.* for three reasons. Here, the probate court did in fact order the social worker to investigate a potential dependency under Probate Code section 1513, subdivision (c). Second, the cases are procedurally distinct. *Christian G.* concerns an appeal from an order establishing a probate guardianship after a contested hearing, not an order directing the social worker to file a section 300 petition, as here. (*Christian G.,* at p. 588.) Third, unlike the parent in

The juvenile court stated, "I think it would be appropriate to file [a section 300 petition] at this point and then if after everyone has a lawyer and is advised mother wants to go [to] probate guardianship and everyone comes in at jurisdiction-disposition and agrees it is appropriate[,] you can dismiss the petition and go probate." If Tonya discussed her options with a court-appointed attorney and decided to proceed in probate court "knowing all the ramifications," the juvenile court said it was not adverse to dismissing the dependency action and proceeding in probate court. It stated, "I will order that the Agency file a petition and that way mom will get an attorney and we can decide what . . . the best route is for Kaylee . . . ."

■ Under section 331 a juvenile court reviewing a social worker's decision not to file a dependency petition must first determine whether there is a prima facie showing that the child comes within the parameters of section 300. (§§ 329, 331; *M.C., supra,* 199 Cal.App.4th at p. 814.) If the juvenile court independently finds that showing has been made, it must then determine whether a dependency petition is necessary to protect the child. When, as here, a guardian has been appointed for the child, the parents' authority over the child ceases: the guardian assumes the care, custody and control of the child. (*Guardianship of Ann S.* (2009) 45 Cal.4th 1110, 1123–1124 [90 Cal.Rptr.3d 701, 202 P.3d 1089]; Prob. Code, § 2351, subd. (a).) If the guardian is a *suitable custodian and able to protect the child from the risks posed by the parent's behavior,*[12] the guardianship is sufficient to ensure the child's safety, protection and well-being.[13] In such cases, the intervention of the juvenile court is not necessary or authorized. (§§ 300, 302; *In re Alexandria M., supra,* 156 Cal.App.4th at p. 1098; *In re Lisa R., supra,* 13 Cal.3d at p. 643.)

While the juvenile court impliedly, and properly, found that because of her parents' circumstances there was a prima facie showing that Kaylee was a child described in section 300, it abused its discretion when it did not then consider whether a dependency petition was *necessary* to protect Kaylee.[14]

*Christian G.,* Jesse and Tonya acknowledged their substance abuse and legal problems, and consented to a probate guardianship for Kaylee. (See *Myah M., supra,* 201 Cal.App.4th at pp. 1518, 1534–1536.)

[12] If the guardian becomes unable to protect the child, the social services agency may remove the child from the guardian and initiate dependency proceedings. (§§ 300, 307.4, 309, 316, 319.)

[13] This of course assumes the parent is not contesting an allegation of unfitness in probate court and seeking custody of the child. (Cf. *Christian G., supra,* 195 Cal.App.4th at pp. 605–606.)

[14] The lack of availability of court-appointed counsel for a parent who has consented to a probate guardianship proceeding is not a factor in determining whether to order the Agency to file a section 300 petition. (Cf. *Myah M., supra,* 201 Cal.App.4th at p. 1536 [referral to social services investigation not required where the parents have voluntarily placed their child in a

The record shows that Kaylee was *not* in the care or custody of her parents, but rather in the custody of a *suitable and protective* guardian. The juvenile court's statement that it was willing to "dismiss the petition and go probate" after Tonya received the advice of counsel, is an implicit finding that Kaylee was not at substantial risk of abuse or neglect *while in the care of her guardian.* Nevertheless, the juvenile court ordered the social worker to file a section 300 petition because of the availability of court-appointed counsel and services for the parents in juvenile court. This was error. The juvenile court should have considered whether the filing of a petition was necessary to protect Kaylee, *not* whether Tonya was fully advised of the consequences of consenting to the probate guardianship.[15] (See *Guardianship of Zachary H.* (1999) 73 Cal.App.4th 51, 68 [86 Cal.Rptr.2d 7] [guardianship proceeding has sufficient standards to be a legitimate mechanism for determining child custody].)

Having concluded that the juvenile court abused its discretion when it ordered the social worker to file a section 300 petition, we now address whether the juvenile court erred when it determined that the petition sufficiently stated essential facts establishing at least one ground of juvenile court jurisdiction.

E

*The Court Abused Its Discretion When It Denied the Motion*
*Akin to a Demurrer*

A dependency petition must contain a "concise statement of facts, separately stated, to support the conclusion that the child upon whose behalf the petition is being brought is a person within the definition of each of the sections and subdivisions under which the proceedings are being instituted." (§ 332, subd. (f).) If the parent believes that the allegations, as drafted, do not

probate guardianship].) The availability of court-appointed legal counsel and/or taxpayer-funded services in dependency proceedings is not relevant to the question whether dependency proceedings are necessary to protect the child; those services are merely an incidental and necessary benefit to the parent when a dependency petition has been filed. Further, the fact that guardianship is not the preferred permanency plan for a young child who may not be able to reunify with his or her parents through dependency proceedings is not relevant under section 331.

[15] The juvenile court may request additional information from the social worker or hear witness testimony if necessary to determine whether the child needs the protection of the juvenile court. (*M.C., supra,* 199 Cal.App.4th at p. 813.)

support a finding that the child comes within section 300, the parent has the right to bring a motion akin to a demurrer. (*In re S. O.* (2002) 103 Cal.App.4th 453, 460 [126 Cal.Rptr.2d 554].)

When the facial sufficiency of a petition filed under section 300, subdivision (b) is challenged on review, we construe the well-pleaded facts in favor of the petition to determine whether the Agency pleaded that the parent or guardian did not supervise or protect the children within the meaning of section 300, subdivision (b). (*In re Janet T.* (2001) 93 Cal.App.4th 377, 386 [113 Cal.Rptr.2d 163]; *In re Nicholas B.* (2001) 88 Cal.App.4th 1126, 1133 [106 Cal.Rptr.2d 465].) A facially sufficient petition "does not require the pleader to regurgitate the contents of the social worker's report into a petition, it merely requires the pleading of essential facts establishing at least one ground of juvenile court jurisdiction." (*In re Alysha S.* (1996) 51 Cal.App.4th 393, 399–400 [58 Cal.Rptr.2d 494].)

Here, the petition alleged: "On or about and between 2009 to 2010 the parents used narcotics and/or dangerous drugs, to wit, methamphetamine, to excess and after this child was born the parents placed her in the care of Craig [D.], who is seeking guardianship of the child through the probate court and on July 20, 2011[,] the juvenile court order[ed] that juvenile court proceedings be commenced pursuant to Welfare [and] Institutions Code section 331."

The juvenile court found that "the petition does allege facts that, if true, demonstrate a substantial risk of *future* harm to the child *if the child is to be in the care of the parents.*" (Italics added.) This construction of the allegations in the petition is problematic on its face. Rather than finding a risk of harm based on the child's *current* circumstances, as required under section 300, subdivision (b),[16] the juvenile court found that the child would be at risk of future harm based on a *conditional* event, which may or may not occur.

---

[16] Under section 300, subdivision (b), a child is subject to juvenile court jurisdiction if the child has suffered, or there is substantial risk that the child will suffer serious physical harm or illness, by the willful or negligent failure of the parent or legal guardian to provide the child with adequate food, clothing, shelter or medical treatment, or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability or substance abuse.

Here, the social worker did not incorporate this language in the petition and did not explicitly allege Kaylee had suffered or was at substantial risk of suffering serious physical harm or illness because her parents could not provide regular care for her. Nevertheless, the petition was filed under section 300, subdivision (b), and the juvenile court construed the well-pleaded facts as incorporating the statutory language.

■ The record shows that the parents placed Kaylee in the care of another person to protect her and provide her with a stable home. They acknowledged their current problems were detrimental to Kaylee's well-being. With the parents' consent, the person with whom she had been placed had been awarded temporary guardianship and, thus, had care, custody and control of the child. (*Guardianship of Ann S., supra*, 45 Cal.4th at pp. 1123–1124; Prob. Code, § 2351, subd. (a).) The application for permanent guardianship was uncontested. The social worker, after investigation, had no concerns about Kaylee's well-being in the guardian's home. There was no indication the guardian was inappropriately caring for Kaylee or was unable to protect her from her parents' problems. The social worker's report indicated that Kaylee was a happy baby who was well cared for by her guardian in a stable environment, despite her parents' continuing problems. Thus, we conclude that the juvenile court erred when it found that the pleadings established at least one ground of juvenile jurisdiction under section 300. (*In re S. O., supra*, 103 Cal.App.4th at p. 460.)

■ Our conclusion is supported by the Legislature's intent that the purpose of dependency proceedings is to provide maximum safety and protection for children who are currently being physically, sexually or emotionally abused, neglected or exploited, and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm, while not disrupting the family unnecessarily or intruding inappropriately into family life. (§§ 300, 302.) The goals of the Legislature are well served when parents, who recognize that their children cannot remain safely within their care, voluntarily place them in the legal custody of a suitable relative or other guardian. (Accord, *Myah M., supra*, 201 Cal.App.4th at p. 1536 [the safety of children would be jeopardized if parents did not have a choice of seeking the alternative of placing their children in a safe place without having the extensive involvement of the state]; see generally *In re A. C.* (2005) 130 Cal.App.4th 854, 868 [30 Cal.Rptr.3d 431].)

We conclude that a miscarriage of justice has occurred and requires reversal. (Cal. Const., art. VI, § 13.)

## DISPOSITION

The findings and orders of the juvenile court are reversed. Pursuant to the parties' joint application and stipulation for reinstatement and extension of temporary guardianship, the temporary guardianship is reinstated and the matter is remanded to the probate court for further proceedings. (See *In re John W.* (1996) 41 Cal.App.4th 961, 975 [48 Cal.Rptr.2d 899] [remand to family court from an appeal of juvenile court order is appropriate to allow the

parties to resolve child custody issues in the proper forum].) Nothing in this opinion should be construed to preclude the Agency from filing a section 300 petition if a probate guardianship is not established or if the guardian, once appointed, cannot adequately protect the child.

McDonald, Acting P. J., and O'Rourke, J., concurred.