Filed 8/30/16  In re R.A. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re R.A., a Person Coming Under the Juvenile Court Law. | C080382 |
| THE PEOPLE,<br><br>       Plaintiff and Respondent,<br><br>  v.<br><br>R.A.,<br><br>       Defendant and Appellant. | (Super. Ct. No. JV137204) |

The minor R.A., a ward of the juvenile court under Welfare and Institutions Code section 602,[1] appeals from the order committing him to an out-of-state facility.[2]  The

---

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

[2]  An in-state placement is referred to as a "Level A" placement.  An out-of-state placement is referred to as "Level B" placement.

1

minor contends the juvenile court abused its discretion in determining that all in-state facilities were unavailable. (§ 727.1.)[3] The minor further contends that the juvenile court abused its discretion by failing to consider the "primary" goal of family preservation when placing the minor out-of-state. We disagree and shall affirm the order of the juvenile court.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 19, 2015, a juvenile wardship petition (§ 602) was filed, alleging that the minor--who was then 14--had willfully discharged a firearm in a grossly negligent manner which could have resulted in injury and death to a person (Pen. Code, § 246.3) and possessed a firearm capable of being concealed upon a person (Pen. Code, § 29610). The intake report indicated that the minor admitted to possessing a firearm and firing a single gunshot that went into the residence of another. The report also indicated that the firearm was found by police in the minor's backyard, and that the firearm was stolen.

At the detention hearing, an amended juvenile wardship petition was filed, adding a third count--willful and malicious discharge of a firearm at an occupied motor vehicle. (Pen. Code, § 246.) At the conclusion of the hearing, the juvenile court ordered the minor removed and detained. The juvenile court further ordered that the temporary placement and care of the minor was the responsibility of the probation officer pending disposition or further order of the court. A settlement conference and suitability hearing

---

[3] Section 727.1, subdivision (b), prohibits placement outside of the state "unless the court finds, in its order of placement, that all of the following conditions are met: [¶] (1) In-state facilities or programs have been determined to be unavailable or inadequate to meet the needs of the minor. [¶] (2) The State Department of Social Services . . . has . . . certified that the facility . . . meets . . . all [California] licensure standards . . . or . . . has [been] granted a waiver . . . . [¶] (3) The requirements of Section 7911.1 of the Family Code [(authority of State Department of Social Services over out-of-state placements)] are met." This appeal only involves the first condition.

2

was scheduled, and the probation officer was directed to submit a memorandum with appropriate recommendations.

On June 4, 2015, the probation officer filed a dispositional report, recommending that the minor be adjudged a ward of the court and be committed to the probation officer for suitable in-state Level A placement. In support of this recommendation, the probation officer provided the following reasons: the minor was a moderate risk to reoffend based on a Positive Achievement Change Tool (PACT) assessment; the minor had a high criminogenic needs score; the gravity and seriousness of the allegations were extremely disconcerting; the minor was an admitted Norteño gang member and used marijuana weekly; and the minor had accumulated numerous behavioral referrals at school[4] and three suspensions in the most recent term. The probation officer also stated that the minor was in need of a structured program to provide intensive services and an opportunity to get back on track educationally.

On June 24, 2015, a second amended juvenile wardship petition was filed at the suitability and settlement conference hearing, adding a fourth count--willful and malicious discharge of a firearm at an inhabited dwelling house. (Pen. Code, § 246.) The juvenile court continued the hearing and ordered the probation officer to prepare and submit appropriate recommendations in light of the new count.

On July 1, 2015, the probation officer filed a dispositional report, recommending that the minor be adjudged a ward of the court and be committed to the probation officer for out-of-state Level B placement. In making this recommendation, the probation officer noted that the minor admitted to shooting at a residence, and had stated that he did

---

[4] The report specified that defendant incurred numerous behavioral referrals for dress code violations involving red clothing and using gang slurs. The report also noted that the minor was detained in "Juvenile Hall's Housing Unit #16 and [was] classified as an 'S-6' (gang-Norteño)."

3

not care if people were in the home and that he would do it again. The minor also told the probation officer that he does what he wants because he does not care.

On July 8, 2015, a third amended juvenile wardship petition was filed, adding a fifth count--failure to stop vehicle at the scene of an accident involving damage to property of another. (Veh. Code, § 20002, subd. (a).) On the same date, the juvenile court directed the probation officer to have the minor referred to the Interagency Management and Authorization Committee (IMAC) for a Level B evaluation and to submit a report.

On August 5, 2015, the probation officer submitted a report, recommending that the minor be adjudged a ward of the court and be committed to an out-of-state Level B placement at Woodward Academy in Iowa. In doing so, the probation officer noted that IMAC determined the minor's needs would be best met at Woodward Academy. The probation officer also recommended, among other things, that the juvenile court find that a continuance in the home of the minor's parent or legal guardian would be contrary to the minor's welfare, in-state facilities were unavailable to meet the minor's needs, and institutional care in the other jurisdiction is in the best interest of the minor and would not produce undue hardship.

A contested jurisdiction hearing began on September 10, 2015, and ended on September 14, 2015. At the conclusion of the hearing, the juvenile court found the allegations in counts 1 through 5 to be true and sustained the third amended petition. The matter was continued for further investigation and a disposition hearing was scheduled for September 18, 2015.

On the date of the disposition hearing, a letter from IMAC was filed. IMAC recommended placement of the minor at Woodward Academy in Iowa. It stated that such a placement was appropriate "so that the minor can receive the high level of structure, supervision, education, and treatment services he requires for rehabilitation and redirecting his behaviors in ways that do not place the community at great risk of harm."

4

In reaching its recommended placement, IMAC reasoned as follows: "The committee's recommendation has taken into consideration that the pending matter before the Court indicates that the minor has engaged in serious and violent criminal behavior. The committee believes that based on the gravity of the minor's offenses as well as the minor's heavy entrenchment in the gang lifestyle, the minor is in need of a highly structured program that has the ability to provide a high level of intervention. Additionally, the committee's recommendation takes into consideration the minor's blatant disregard for the safety of the community as well as his current behavior in Juvenile Hall that includes repetitious acts of defiance and gang agitation."

With respect to its determination that other alternative placements were not suitable, IMAC explained: "Other alternatives were not considered to be suitable as the Committee believes the minor needs to be geographically removed from his gang affiliates and the criminal lifestyle in which he is currently involved in order to benefit from a residential treatment program. Woodward Academy offers a program that provides treatment, structure, and supervision within a peer based program and treatment model that the Committee believes will be most appropriate to meet the minor's needs. The Committee believes that there are no suitable in state facilities that can meet the needs of the minor in view of the gravity of the offense, the minor's disregard of the safety of the community, current behavior, and the fact that his gang affiliation limits in state placement options."

At the conclusion of the disposition hearing, the juvenile court adjudged the minor a ward of the court and committed him to juvenile hall to serve 126 days, with credit for the 126 days he had already served. The juvenile court ordered the minor committed to Woodward Academy in Iowa. In making this decision, the juvenile court concluded that the minor was a danger to the public, it was in the minor's best interest to be in a highly structured program that such a placement would provide him, reasonable efforts were made to prevent or eliminate the need for removal, and in-state facilities were unavailable

to meet the minor's needs. The juvenile court also adopted the findings recommended by the probation department.

In committing the minor to Woodward Academy, the juvenile court reasoned, in part:

"I have reviewed [the minor's] school records. The school records show that in the 7th grade, he got virtually all F's. His performance continued in the 8th grade through February of 2015 when he was finally transferred to Success Academy. At that time, he was still receiving essentially all F's.

"His performance shows almost a continuous stream of disruptive behavior from the start of the school year through his eventual transfer from Kit Carson. I count at least 37 incidents from the start of the school year, September 2014 through February 2015. A lot of those incidents involved very disruptive behavior, disrespect toward authority figures, gang incidents, wearing red, flashing gang signs, so on and so forth.

"I have also reviewed the case plan that has been submitted in this case. It shows that the risk factors associated with [the minor] also far outweigh the protective factors.

"Among other things, he embraces antisocial values and friends, including gang members. He acts impulsively. He doesn't appreciate that there are consequences to his actions. And, in my view, all of those were on full display during the current offense. His PACT scores show he has high criminogenic needs. All of this, in my view, supports the need to put the minor in a highly structured program.

"I considered Level A. And I think for the reasons I just now reviewed -- these were my thoughts beforehand, but I now see IMAC's reasoning -- I think Level A would not address the true needs here, because he would most likely be sent to a Level A facility in northern California as a result of his Norteño affiliations. And I think there is a great risk there. I have seen minors abscond from those facilities.

6

"I've found great success in sending kids to Level B placement where they are out of that gang milieu. And those programs are self-contained, as [the prosecutor] pointed out. They have on-site campuses.

"I think your client would do well there. That's my thinking."

Defendant filed a timely notice of appeal.

**DISCUSSION**

Under section 727.1, subdivision (b)(1) (see fn. 2, *ante*), a juvenile court may not order out-of-state placement of a ward unless instate facilities or programs have been determined to be unavailable or inadequate to meet the needs of the minor. (*In re Oscar A.* (2013) 217 Cal.App.4th 750, 757 (*Oscar A.*).) "The court need not determine all in-state facilities are unavailable. It may determine in-state facilities are either unavailable or inadequate [citation]. The mere existence of other facilities in California does not mean the court abused its discretion by ordering out-of-state placement." (*Ibid.*)

" 'We review a juvenile court's commitment decision for abuse of discretion, indulging all reasonable inferences to support its decision.' [Citation.] ' "[D]iscretion is abused whenever the court exceeds the bounds of reason, all of the circumstances being considered." ' [Citations.] We will not disturb the juvenile court's findings when there is substantial evidence to support them. [Citation.] ' "In determining whether there was substantial evidence to support the commitment, we must examine the record presented at the disposition hearing in light of the purposes of the Juvenile Court law." ' [Citation.]" (*Oscar A., supra*, 217 Cal.App.4th at pp. 755-756.) The scope of discretion depends on the legal principles governing the subject of the action; action that transgresses the confines of the applicable legal principles constitute abuse of discretion. (*In re Kaylee H.* (2012) 205 Cal.App.4th 92, 104-105, citing *City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1297.)

The purpose of the juvenile court law is "to provide for the protection and safety of the public and each minor under the jurisdiction of the juvenile court and to preserve

7

and strengthen the minor's family ties whenever possible, removing the minor from the custody of his or her parents only when necessary for his or her welfare or for the safety and protection of the public. If removal of a minor is determined by the juvenile court to be necessary, reunification of the minor with his or her family shall be a primary objective. If the minor is removed from his or her own family, it is the purpose of this chapter to secure for the minor custody, care, and discipline as nearly as possible equivalent to that which should have been given by his or her parents. This chapter shall be liberally construed to carry out these purposes." (§ 202, subd. (a).) "Minors under the jurisdiction of the juvenile court as a consequence of delinquent conduct shall, in conformity with the interests of public safety and protection, receive care, treatment, and guidance that is consistent with their best interest, that holds them accountable for their behavior, and that is appropriate for their circumstances. . . . When the minor is no longer a ward of the juvenile court, the guidance he or she received should enable him or her to be a law-abiding and productive member of his or her family and the community." (§ 202, subd. (b).)

"In determining the judgment and order to be made in any case in which the minor is found to be a person described in [s]ection 602, the court shall consider, in addition to other relevant and material evidence, (1) the age of the minor, (2) the circumstances and gravity of the offense committed by the minor, and (3) the minor's previous delinquent history." (§ 725.5.)

We conclude the juvenile court did not abuse its discretion in ordering an out-of-state placement. The juvenile court's decision does not exceed the bounds of reason and is supported by substantial evidence. The record discloses that the minor was a danger to the public, and that he was in need of a highly structured program such as the one offered by Woodward Academy. The record reflects, among other things, that the minor engaged in serious and violent criminal behavior, lacked remorse for his conduct, embraced antisocial values and was impulsive, did not understand that there are consequences to his

8

actions, had a high criminogenic needs score (i.e., he had a high likelihood of committing another crime), had a significant history of disruptive behavior and gang-related incidents (including recent incidents while in Juvenile Hall), and was performing very poorly at Kit Carson Elementary School. The record also reflects that in-state facilities were unavailable to meet the minor's needs based on his gang affiliations and behavior. It shows that in-state facilities would not best serve the minor's interest because they did not offer the necessary level of security and treatment to rehabilitate the minor.

The minor argues that the juvenile court erred because it did not consider any in-state facility for placement. We disagree. As an initial matter, the juvenile court was not required to place the minor in state if in-state facilities were determined to be "unavailable or inadequate." (§ 727.1, subd. (b)(1).) The record demonstrates that the juvenile court considered in-state placement but decided that an out-of state placement was necessary to meet the minor's needs. In making this decision, the juvenile court specifically noted that the minor needed an out-of-state placement to provide him with a highly structured program that was geographically removed from his gang affiliates and the criminal lifestyle he was involved in.

The minor's reliance on *In re Khalid B*. (2015) 233 Cal.App.4th 1285, is misplaced. In that case, the ward was immediately sent to an out-of-state placement after admitting he committed involuntary manslaughter. (*Id*. at pp. 1287-1289.) An in-state placement was never tried by probation even though three facilities had been suggested by the minor. (*Id*. at p. 1289.) Here, unlike in *Khalid B*., the minor's in-state placement options were limited because of his gang affiliation. Further, the juvenile court specifically found that an out-of-state placement was appropriate because, unlike an in-state placement, it would provide a self-contained on-site campus with a highly structured environment that was geographically removed from the minor's gang affiliates. The juvenile court concluded that such a placement would best serve the minor's interests by providing the services and security needed to reform him.

9

The minor's reliance on *Oscar A.* is likewise misplaced. In that case, the ward was sent to an out-of-state placement after he had violated his probation numerous times, repeatedly ran away from his home, and ran away from one in-state facility and was terminated from another. (*Oscar A., supra*, 217 Cal.App.4th at pp. 752-754.) We are unpersuaded by the minor's contention that the juvenile court erred in ordering an out-of-state placement because he was not given an opportunity to be placed on probation or in an in-state facility. *Oscar A.* does not establish that an in-state placement must be tried before an out-of-state placement can be made. Nor does it establish that a minor must be placed on probation before an out-of-state placement can be made. Moreover, *Oscar A.* is distinguishable because the ward in that case was not affiliated with a gang.

Finally, we reject the minor's contention that the juvenile court abused its discretion in placing him out-of-state without considering the "primary" goal of family preservation. "Although public safety and the rehabilitation of the minor (presumed to serve the best interests of the delinquent minor) are the preeminent goals of the juvenile law relating to delinquent minors, it is also true that family reunification and the reintegration of the minor into his family are statutorily recognized to be important and complementary goals." (*In re James R.* (2007) 153 Cal.App.4th 413, 434 (*James R.*).) On this record, we discern no abuse of discretion. The record discloses that the juvenile court correctly considered public safety and the rehabilitation of the minor in deciding to place him out-of-state. It also shows that the case plan contemplates family reunification services.

The cases relied upon by the minor--*James R.* and *In re L.M.* (2009) 177 Cal.App.4th 645--are unhelpful to him. Both cases involved family visitation rights regarding a ward in an out-of-home placement. Here, the issue is whether the juvenile court abused its discretion in ordering out-of-state placement for a minor who has been adjudged a ward of the court due to criminal conduct. Nothing in the cases cited by the minor support the conclusion that the juvenile court erred. The record shows that the

10

juvenile court considered the relevant factors in determining to place defendant in an out-of-state facility.  The minor has not demonstrated that the juvenile court's decision constitutes an abuse of discretion.

## DISPOSITION

The order of the juvenile court is affirmed.


       /s/       
Blease, J.


We concur:


   /s/       
Raye, P. J.


   /s/       
Hoch, J.

11