Filed 9/1/16  In re A.M. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re A.M., et al., Persons Coming Under the Juvenile Court Law. | B268772 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. DK13283) |
| Plaintiff and Respondent, | |
| v. | |
| A.R., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Philip L. Soto, Judge.  Affirmed as modified.

Valerie N. Lankford, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, R. Keith Davis, Assistant County Counsel, Jessica Paulson-Duffy, Deputy County Counsel, for Plaintiff and Respondent.

_____

A.R. (mother) appeals from the order adjudicating her three sons, aged 7 to 12, as persons described by Welfare and Institutions Code section 300, subdivision (b), and from the dispositional order terminating jurisdiction and placing the children with their father, J.M.[1] Mother contends the orders were not supported by substantial evidence. We modify the jurisdiction order to correct a conceded error, but otherwise affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts are not in dispute. The family came to the attention of the Department of Children and Family Services (DCFS) on August 17, 2015, when DCFS received a referral that mother had abandoned the children with her mother, the children's maternal grandmother, for several months. Although DCFS concluded that referral was unfounded, its investigation revealed a family in crisis.

Mother and the children were living with maternal grandmother. Mother had been suffering from depression since 2010 and, for the past year, had ceased taking her medication and attending therapy. She was depressed, anxious, and worried. Mother was cutting herself; she had cut her wrist with a razor two days before the social worker's investigation. Mother had tried to check herself into a medical center on an involuntary psychiatric hold, but had been told that she did not meet the necessary criteria. In addition to her mental illness, mother was a substance abuser, regularly using methamphetamine and marijuana. She had last smoked methamphetamine the week before the social worker arrived.

Mother did not have a job and was not enrolled in school. She slept at her mother's house most nights; she spent her days out of the house with her boyfriend. Sometimes she would go away for three or four days at a time; when she returned she would sleep all day. Her untreated depression caused her to always be sad; the children reported that she cried a lot. She did not take care of the children; maternal grandmother took on that responsibility "at all times due to [mother] not knowing much about her children's care." It appears that mother's only contribution to raising the children was to

---

[1] All statutory references are to the Welfare and Institutions Code.

2

use her CalFresh card or CalWORKs subsidy to buy groceries for the children, although she sometimes gave her CalFresh card to maternal grandmother to do the shopping. She provided the children's doctor with a letter in which she authorized maternal grandmother to make medical decisions. Mother was more of a guest in the home than a parent; maternal grandmother told the DCFS investigator that the children "were able to see their mother when she came to visit."

DCFS subsequently learned that the children's father, who lived north of Sacramento, wanted custody. He regularly paid child support and brought the children to his home on vacations and during the summer. He had asked mother to let him take the children home with him, but she refused, telling him that she had been granted legal custody when they filed for divorce. In truth, there were no family law orders; father had filed for divorce, but the proceeding was never resolved.

On September 4, 2015, DCFS detained the children in maternal grandmother's home; mother moved out of the house and consented to the detention. On September 10, 2015, DCFS filed a petition alleging the children were dependent under section 300, subdivision (b), alleging that the children were at risk due to mother's substance abuse and mental and emotional problems. The petition further alleged that father had been aware of mother's drug use and had failed to protect the children.

At the detention hearing, father appeared and requested the children be released to him immediately. DCFS wanted additional time to assess father's home. The court disagreed, concluding the children should be placed with father unless it was detrimental to them, and no detriment had been established. The court detained the children from mother and released them to father. Mother was to have monitored telephonic visits. She was given referrals for services, and was required to drug test weekly on demand.

Between the detention and adjudication hearings, the children moved into father's home and were having their needs met there. They were fitting in well with the new household. Investigators concluded that father had not known that mother was using drugs, or that she had been struggling with depression. They considered father to be non-offending.

3

In the meantime, mother had failed to present herself for drug testing. On October 9, she checked herself into a substance abuse program at Tarzana Treatment Center; she admitted using methamphetamine a few days earlier, but said she wanted to stop. She left Tarzana Treatment Center on October 20, "for no apparent reason." She was not heard from for a week. On October 28, she arrived at maternal grandmother's house for a shower and to change clothes. Mother told the DCFS investigator that she left the Tarzana Treatment Center program because she "was experiencing a lot of anxiety and [she] was not getting the treatment [she] needed."

The adjudication hearing was held on October 29. Father's appearance had been waived; mother failed to appear. DCFS recommended sustaining the petition against mother and terminating jurisdiction with a family law order granting sole physical custody to father. Mother's counsel argued against a finding of jurisdiction. While conceding that mother had substance abuse and depression issues, counsel argued that mother "gave these children to the maternal grandmother. She made the plan with the maternal grandmother. The maternal grandmother met all of their needs. [¶] Apparently – this is – I would say this is akin to a parent who is incarcerated and who makes a plan for the children while they are unavailable to care for their kids. My client had that self awareness. She was aware that she was not in a position to care for the children. And she made the plan that the maternal grandmother would take care of them." Mother's counsel argued that, because mother had made a plan that maternal grandmother would care for the children, there was no risk of harm to the children.

The court disagreed with the argument, responding, "She's not an incarcerated parent. She doesn't have a right to just drop them off at someone's house and have someone else – even if that person is doing a fine job. She doesn't have a right to just abandon her children with anybody. She's responsible for those children. She didn't live up to that responsibility and that's what causes the risk."

The court struck the allegations against father, and found the petition true as to mother. The court found the children to be described by section 300, subdivision (b).

4

Turning to disposition, the court then found, under section 361, subdivision (c), that removal of the children from mother was necessary due to the risk to their well-being if returned to her. The children were released to father. The court terminated jurisdiction, issuing a family law order granting father legal and physical custody, with mother to have supervised visitation. Mother filed a timely notice of appeal.

**DISCUSSION**

On appeal, mother argues the evidence is insufficient to support the finding of jurisdiction, in that there is insufficient evidence of a risk to the children, as they were doing well in maternal grandmother's care. She similarly argues there was insufficient evidence of risk to justify removing the children from her home.

1.    *Substantial Evidence of Risk Supports Jurisdiction*

Jurisdiction under section 300, subdivision (b) may be supported by the parent's inability "to provide regular care for the child because of the parent's mental illness . . . or substance abuse." [Citation.] [¶] [Jurisdiction requires proof of] " '(1) neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) "serious physical harm or illness" to the minor, or a "substantial risk" of such harm or illness.' [Citation.]" (*In re John M.* (2013) 217 Cal.App.4th 410, 418 (*John M.*).) We are concerned here with the third element.

"Although 'the question under section 300 is whether circumstances *at the time of the hearing* subject the minor to the defined risk of harm' [citation], the court may nevertheless consider past events when determining whether a child presently needs the juvenile court's protection. [Citations.]" (*In re T.V.* (2013) 217 Cal.App.4th 126, 133.)

The juvenile court's finding that a child is a person described by section 300 must be supported by a preponderance of the evidence. (§ 355; *John M., supra*, 217 Cal.App.4th at pp. 410, 418.) On appeal, we review those findings for substantial evidence, which is relevant evidence that " 'adequately supports a conclusion; it is evidence which is reasonable in nature, credible and of a solid value.' [Citation.]" (*In re Francisco D.* (2014) 230 Cal.App.4th 73, 80.)

5

It is well-established that a parent's substance abuse alone does not mean "that a parent is unable to provide regular care resulting in a substantial risk of physical harm to the child." (*In re Drake M.* (2012) 211 Cal.App.4th 754, 766.) Here, mother concedes that her substance abuse and unresolved mental illness rendered *her* wholly unable to provide regular care for her children. She argues instead there was no substantial risk of harm to the children in her care, because she had arranged for maternal grandmother to care for the children. But in *Drake M.* and the cases like it, it was the drug-using parent him- or herself who continued to provide regular care to the child, despite drug use. Here, all of the evidence is that mother herself could not provide regular care for her children. She suggests that she can avoid the finding of risk which necessarily follows because another relative stepped up and provided the parenting that she did not.

Yet mother only placed the children in maternal grandmother's care through the informal process of living in the same house and not caring for them herself. There is a formal procedure by which parents, aware of their unfitness, may arrange for another person to temporarily or permanently care for their children: guardianship. (*Adoption of Myah M.* (2011) 201 Cal.App.4th 1518, 1536.) Guardianship enables parents to place their children in a safe place while "avoid[ing] the involvement of the county child welfare agency." (*Ibid.*) Once the guardian is appointed, the guardian assumes the care, custody and control of the child, and if the guardian is suitable and able to protect the child from the risks posed by the parents' behavior, the guardian is sufficient to ensure the child's protection without intervention of the dependency court. (*In re Kaylee H.* (2012) 205 Cal.App.4th 92, 106.) Mother's argument boils down to the proposition that an informal de facto guardianship is sufficient to protect her children from the risks she presents to them.

We cannot agree. Without any legal acknowledgement of maternal grandmother's right and responsibility to care for the children, mother can change her mind at any time and remove them from maternal grandmother – a scenario that would be disastrous, given mother's condition. Moreover, mother still lived in maternal grandmother's house, exposing her children to the effects of her untreated depression and substance abuse. The

children were aware that she had depression, and would frequently see her crying. Mother did not cut herself in front of her children, but the marks on her wrist were visible. Although mother did not use drugs in front of the children, her eldest son knew she was using because of her behavior. When father offered to take custody of the boys, mother refused, lying about a custody order that did not exist, in order to keep the children near her despite her conceded drug use and propensity for self-harm.

Mother's recognition of her unfitness and her attempt to find someone else to parent the children is surely a positive. Maternal grandmother's willingness to parent three young boys while still providing a home for her depressed, substance-abusing daughter is commendable. But to state that this arrangement did not present a risk of harm to the children is to deny the reality of untreated depression and uncontrollable drug addiction.

2.      *Substantial Evidence Supports Removal*

After an adjudication of dependency, a "dependent child shall not be taken from the physical custody of his or her parents . . . with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence . . . . [¶] There is or would be a substantial danger to the health, safety, protection or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." (§ 361, subd. (c)(1).) We review the juvenile court's dispositional finding for substantial evidence. (*In re Henry V.* (2004) 119 Cal.App.4th 522, 529.)

Making the same argument as above, mother contends the evidence necessitating removal is insufficient. For the same reasons, we disagree. Mother's untreated depression and substance abuse rendered her wholly incapable of caring for the children in her home. While maternal grandmother had done an admirable job parenting the children when mother could not, this does not undermine the fact that mother presented a substantial risk of harm to the children.

7

3.      *To the Extent the Court Misspoke, the Jurisdictional Findings Must be Modified*

The petition alleged the children were described by subdivision (b) of section 300. The court found true the allegations under that particular subdivision, and this is reflected in the minute order.  However, at the hearing, the court mistakenly stated that the children were described by subdivisions (a) through (j) of the statute.  As to any subdivision other than (b), there were no allegations and there was no evidence.  These additional findings were undoubtedly nothing more than a mistake by the trial court.  DCFS agrees the order was in error.

## DISPOSITION

The jurisdiction order is modified to delete any finding that the children were described by section 300, subdivisions (a), (c)-(j); they were described by subdivision (b) only.  In all other respects, the jurisdiction and dispositional orders are affirmed.


                                                              RUBIN, J.

WE CONCUR:


            BIGELOW, P. J.


            GRIMES, J.

8