Filed 6/28/13

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| In re OSCAR A., a Person Coming Under the Juvenile Court Law. | D062817 |
| THE PEOPLE, | |
| Plaintiff and Respondent, | (Super. Ct. No. JJL24519) |
| v. | |
| OSCAR A., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Imperial County, Christopher W. Yeager, Judge.  Affirmed.

James M. Crawford, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and Jennifer B. Truong, Deputy Attorneys General for Plaintiff and Respondent.

Defendant Oscar A., a ward of the juvenile court, appeals an order committing him to an out-of-state placement.  Oscar contends the court abused its discretion by ordering

out-of-state placement because there was no evidence that in-state facilities were unavailable or inadequate under Welfare and Institutions Code section 727.1, subdivision (b)(1).[1]  We affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

In August 2009 the District Attorney of Imperial County filed a petition under section 602, alleging Oscar, then age 13, had committed misdemeanor vandalism (Pen. Code, § 594, subd. (a)).  Oscar admitted the allegations, and the court declared him a ward of the court (§ 602).  The court put Oscar on formal probation in the custody of the Imperial County Probation Department (probation department) and placed him with his father.

In February 2010 the district attorney filed a second section 602 petition, alleging Oscar violated probation (§ 777, subd. (a)(2)) because he did not follow his parents' directives, left home without permission on seven separate occasions, was suspended from school five times, became friends with a known parolee, and smoked marijuana daily for the previous two weeks.  The petition further alleged Oscar's parents told his probation officer that Oscar was out of control and had become verbally aggressive toward them, as well as toward students and staff at school.  Oscar admitted the allegations, and the court reinstated probation.

In April 2010 the district attorney filed a third petition, alleging Oscar again violated probation.  The petition alleged the probation officer had learned Oscar still

---

[1]     All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

would not follow his parents' directives, was verbally abusive toward them, left home without permission for almost two weeks, skipped school for five days, committed another act of vandalism, and continued to smoke marijuana. Oscar admitted the allegations, and the court again reinstated probation.

In September 2010 the district attorney filed a fourth petition, alleging Oscar violated probation. The petition alleged Oscar had impermissibly left his home on September 6 and skipped school for two days. He admitted these violations, and the court reinstated probation for a third time, adding more conditions.

In December 2010 the district attorney filed a fifth petition, alleging Oscar again violated probation. The petition alleged Oscar continued to leave home without permission, skip school, smoke marijuana, associate with a known parolee, and skip required sessions at the Evening Learning Center. The court revoked probation and detained Oscar pending disposition. Oscar read a letter to the court, explaining he ran away out of fear of going to placement should he violate probation again. At disposition, the court reinstated Oscar's probation in the custody of his father, but noted any further violation would result in out-of-home placement.

In January 2011 the district attorney filed a sixth petition, alleging Oscar violated probation. The morning after disposition, Oscar refused to go into his father's house after his release from juvenile hall. He then left without permission and did not return until after 10 p.m. The court subsequently removed Oscar from his parents' custody and directed the probation department to find a placement to address his rehabilitative needs. The probation officer placed Oscar at the Alpha Connections facility toward the end of

January.  Initial reports indicated Oscar had adjusted well to the program and appeared motivated to act appropriately.  However, Oscar's behavior declined when he learned he would not return home after the school year, and he ran away in late July.  The court issued a bench warrant, but Oscar remained AWOL (absent without leave) until he turned himself in six months later.  The court reinstated his placement a few days later.  While the probation officer tried to find a new facility, Oscar was diagnosed with bipolar disorder, but refused to take medication.

In early March, Oscar went to EE's Residential Care Group (EE's) for placement.  While at EE's, Oscar received more than 30 incident reports for various problems, such as noncompliance, disrespecting staff, excessive profanity, stealing food, leaving without permission, gang writing, tagging property, and getting into fights.

Toward the end of April, Oscar ran away from EE's.  After his arrest, the district attorney filed a seventh petition, alleging Oscar violated probation.  The court reinstated Oscar's placement, but detained him in juvenile hall until a new facility accepted him.  At his placement review, the probation officer informed the court that he had sent applications to two California facilities, PHILOS and California Family Life Center (CFLC), and that Rite of Passage Silverstate Academy (ROP) in Nevada had accepted Oscar.  Oscar's counsel objected to the out-state-placement because the probation officer had not exhausted all in-state options.  The probation officer provided a memorandum documenting its continued efforts to locate an in-state facility and Oscar's acceptance to CFLC in late May.  At CFLC, Oscar had some incident reports involving use of profanity and refusing to follow rules and directives.

In June, the district attorney filed the eighth petition, alleging Oscar violated probation after CFLC terminated his placement. Oscar had moved into a particular room without permission. When staff told him to move, Oscar became aggressive and shoved a staff member. At his detention hearing, the probation officer indicated the PHILOS group home had accepted Oscar for alternative placement. Oscar remained there for about a month and showed progress by attending his classes with no incidents at first. In July 2012, however, PHILOS terminated Oscar's placement for disregarding rules and directives, refusing to turn over a box cutter, and general negative behavior. At this point, Oscar went AWOL again.

The district attorney filed its ninth petition, alleging Oscar violated probation, and requested a bench warrant. After his arrest on August 4, Oscar told the court he believed he was being set up for failure with continued placement and could not do it. The court granted his request for a Behavioral Health Services assessment and detained him in juvenile hall until further placement became available.

The district attorney subsequently filed a tenth petition against Oscar, alleging he violated Health and Safety Code section 11550 by being under the influence of methamphetamine at the time of his arrest.

In late August, the probation officer conducted the Behavior Health Services assessment. The assessment indicated that Oscar dislikes placement, which is why he repeatedly runs away or gets terminated. It further described Oscar's poor relationship with his parents, problems at school, behavioral issues, and long history of substance abuse. The assessment recommended Oscar receive individual and family

5

psychotherapy, medication support, and substance abuse services.  From this, the probation officer concluded out-of-state placement would best serve Oscar's interests.  The probation officer again recommended ROP in Nevada for its locked facility, which would minimize Oscar's ability to run away before completing treatment.

In September 2012 Oscar admitted using methamphetamine.  Oscar's counsel argued the court should not yet place Oscar out-of-state because the probation officer provided insufficient evidence to support that recommendation.  The court agreed and instructed the probation officer to provide a memorandum listing specific reasons why in-state facilities were unavailable or inadequate.  The probation officer's second memorandum stated Oscar either ran away or was terminated from his first four homes and that two additional in-state facilities had denied Oscar acceptance into their programs.

That month, the court held a placement review hearing to determine whether to order out-of-state placement.  Oscar's counsel again argued the probation officer had not provided sufficient evidence to show a need for out-of-state placement.  The probation officer stated all four of Oscar's previous homes denied his readmission, and she had sent applications to all the other group homes utilized by her department.  She recommended ROP because it operated a higher level facility than California facilities, had more extensive services, and more supervision.  When pressed by Oscar's counsel as to its differences from in-state facilities, the probation officer explained ROP offers classes more frequently and provides on-site staff, such as psychiatrists.  Additionally, it has an on-site school and is "self-contained," which would limit Oscar's access to the public and

6

ability to run away. The probation officer further noted California had only two facilities with an on-site school, both of which had denied Oscar admission.

After learning the probation department traditionally utilizes only certain facilities, Oscar's counsel asked whether other California facilities could possibly have on-grounds schools, to which the probation officer replied affirmatively. The district attorney then asked why Imperial County only uses certain facilities. The probation officer explained that some facilities only service specific counties, and as such, her department limits its efforts to those that will accept juveniles from Imperial County. Oscar's counsel then argued the probation department and the court could not rely on mere custom as a sufficient basis to determine in-state facilities were unavailable or inadequate. The district attorney responded that the law does not require an exhaustion of all in-state facilities and noted the probation officer's efforts to find a highly structured program that would address Oscar's needs.

The court found an out-of-state facility would best serve Oscar's interests and in-state facilities were unavailable or inadequate. The court authorized Oscar's placement at ROP in Nevada.

DISCUSSION

Oscar contends the court abused its discretion by ordering out-of-state placement under section 727.1 because there was insufficient evidence that in-state facilities were unavailable or inadequate. We reject this contention.

"We review a juvenile court's commitment decision for abuse of discretion, indulging all reasonable inferences to support its decision." (*In re Antoine D.* (2006) 137

7

Cal.App.4th 1314, 1320.)  "'[D]iscretion is abused whenever the court exceeds the bounds of all reason, all of the circumstances being considered.'"  (*In re Carl N.* (2008) 160 Cal.App.4th 423, 432, quoting *People v. Giminez* (1975) 14 Cal.3d 68, 72.)  We will not disturb the juvenile court's findings when there is substantial evidence to support them.  (*In re Carl N., supra,* at p. 432.)  "In determining whether there was substantial evidence to support the commitment, we must examine the record presented at the disposition hearing in light of the purposes of the Juvenile Court Law.'"  (*Ibid.*)

The purpose of the juvenile court law is

> "to provide for the protection and safety of the public and each minor under the jurisdiction of the juvenile court and to preserve and strengthen the minor's family ties whenever possible, removing the minor from the custody of his or her parents only when necessary for his or her welfare or for the safety and protection of the public.  If removal of a minor is determined by the juvenile court to be necessary, reunification of the minor with his or her family shall be a primary objective. If the minor is removed from his or her own family, it is the purpose of this chapter to secure for the minor custody, care, and discipline as nearly as possible equivalent to that which should have been given by his or her parents.  This chapter shall be liberally construed to carry out these purposes."  (§ 202, subd. (a).)

Minors under the juvenile court's jurisdiction must receive the care, treatment, and guidance consistent with their best interest and the best interest of the public.  (§ 202, subd. (b).)  Additionally, minors who have committed crimes must receive the care, treatment, and guidance that holds them accountable for their behavior, is appropriate for their circumstances, and conforms with the interest of public safety and protection.  (*Ibid.*)  This guidance may include punishment that is consistent with the rehabilitative objectives.  (*Ibid.*)  "When the minor is no longer a ward of the juvenile court, the

8

guidance he or she received should enable him or her to be a law-abiding and productive member of his or her family and the community." (*Ibid*.)

Under section 727.1, subdivision (b)(1), a court may not order out-of-state placement of a ward unless "[i]n-state facilities or programs have been determined to be unavailable or inadequate to meet the needs of the minor."

Reviewing the court's decision under the abuse of discretion standard and in light of the juvenile court law's rehabilitative purposes, we conclude the court properly ordered out-of-state placement for Oscar. The court determined in-state facilities were unavailable or inadequate based on Oscar's delinquent history and the higher level of care offered at the out-of-state facility. Moreover, Oscar violated his probation five times before the court ordered placement. His behavior included not following his parents' directions, breaking curfew, leaving home without permission, skipping school, associating with known parolees, verbally abusing others, and using marijuana. Throughout placement, Oscar continued to demonstrate poor behavior and limited success. At each facility, he had multiple incidents with issues such as disobeying directions, leaving without permission, tagging, stealing food, fighting with other wards, carrying a weapon, and getting physical with staff. Oscar failed to complete any of the rehabilitation programs because he either ran away or was terminated. Despite the court's repeated attempts to rehabilitate Oscar, his behavior showed little improvement. The court relied on this evidence to find the in-state facilities were not adequately addressing Oscar's needs.

Additionally, the probation officer explained that all four of Oscar's previous homes had denied readmission and identified two new facilities that had rejected Oscar's application based on his past behavior and poor interview. The probation officer recommended the Nevada facility because she believed it had the amenities to better address Oscar's issues. She noted this facility had on-site psychiatrists, an on-grounds school, more frequent classes, higher supervision, and was self-contained, which would limit Oscar's chance to run away or access the public as he did at previous homes. Although the probation officer conceded other facilities with an on-grounds school may exist in California, the two such facilities with an on-grounds school utilized by Imperial County had rejected Oscar. She then explained Imperial County did not use all California facilities because not all of those facilities service juveniles from Imperial County.

Oscar reads section 727.1 subdivision (b) to mean the court must exhaust every available in-state facility before ordering out-of-state placement. He contends the court provided no explanation as to why certain facilities were considered over others, and there was no evidence of the probation officer's efforts to locate in-state facilities. Oscar relies heavily on California's large size and number of facilities to contend other in-state facilities were available, but were simply not considered by the probation department or the court.

These contentions reflect an inaccurate reading of the law. The court need not determine all in-state facilities are unavailable. It may determine in-state facilities are either unavailable *or* inadequate (§ 727.1, subd. (b)(1)). The mere existence of other

10

facilities in California does not mean the court abused its discretion by ordering out-of-state placement. At the placement review hearing, the court ruled:

> "I'm finding that the out-of-state group home meets the foster care certified requirements, that through the investigation of the probation officer, the in-state facilities are either unavailable or inadequate or no longer accepting of Oscar because of his AWOL activities; that equivalent facilities are not available in the jurisdiction and, therefore, out-of-state placement is in the best interests of the child and will not produce undue hardship for all of the reasons stated by [the probation officer] in her description of Silver State. [¶] So therefore the court is authorizing placement at Rite of Passage Silver State in Nevada."

The court retains discretion to decide in-state facilities were simply inadequate to rehabilitate a minor. The record shows Oscar's repeated failures to remain in and complete four in-state programs. It also shows California facilities either would not service Oscar or would not provide the necessary level of treatment and security. The court, considering Oscar's history, explicitly adopted the probation officer's recommendation and found the Nevada facility would best serve Oscar's needs because it offered a more contained and intensive program with amenities not provided by in-state facilities.

We cannot say the court exceeded the bounds of reason by deciding the in-state facilities were unavailable or inadequate when the record reflects they would not provide the services, security, and amenities needed to reform Oscar. Given Oscar's behavioral issues, substance abuse, and multiple AWOL's, an out-of-state facility would best serve his interests and the purposes of the juvenile court law to enable him to become a law-abiding and productive member of society. There was no abuse of discretion.

11

DISPOSITION

The judgment is affirmed.


NARES, J.

WE CONCUR:


McCONNELL, P. J.


HUFFMAN, J.