Filed 2/24/15  In re M.C. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

| | |
|---|---|
| In re M.C., a Person Coming Under the Juvenile Court Law. | C075449 |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>M.C.,<br><br>        Defendant and Appellant. | (Super. Ct. No. 132807) |

The minor M.C. appeals from a juvenile court order placing him in a "Level B" (out-of-state) facility.  He contends the juvenile court abused its discretion in deciding a "Level A" (in-state) facility was unavailable or inadequate.  We conclude the minor has failed to demonstrate an abuse of discretion and will affirm the order.

1

PROCEDURAL AND FACTUAL BACKGROUND

On May 16, 2011, the victim, an off-duty deputy sheriff, was home when she heard a window break and saw an individual enter her home through the broken window. Several other suspects stood in front of her home acting as lookouts. A witness saw the minor leaving the front of the residence.

A petition filed on May 18, 2011, pursuant to Welfare and Institutions Code section 602 alleged that the minor committed a first degree burglary. On June 3, 2011, the minor admitted the allegation and the court granted deferred entry of judgment (DEJ).

On November 14, 2011, officers went to the residence of Mariah S. in an attempt to locate the minor, her boyfriend, who had been reported as a possible missing person. With consent, the officers searched the home. In Mariah's bedroom, officers found several mature marijuana plants hidden under the covers of her bed, several more plants drying in her closet, and a fan and light used for drying marijuana. The marijuana was estimated to weigh 1.76 pounds. Mariah stated that the minor brought the marijuana to her house to dry for their personal use. The next day, the minor was found at his home. He claimed he found the marijuana growing along a creek bed and took it, intending to cultivate and sell it. He admitted taking the plants to Mariah's house for her to hide and dry.

A new wardship petition filed November 21, 2011, alleged the minor cultivated marijuana. On December 13, 2011, the minor entered a negotiated admission to a related allegation of possession of marijuana. The court revoked DEJ, adjudged the minor a ward of the court, granted probation with a total custody time of six years two months, and ordered the minor to serve four days in juvenile hall with credit for time served.

On February 13, 2012, after being kicked out of his house by his mother, the minor broke a window at his own home and took several items while his girlfriend waited in front of the house.

On February 25, 2012, the minor acted as a lookout as another juvenile broke into a home and took several items.

On March 1, 2012, the minor broke a window to gain entry into a home and then kicked in the door to the bedroom where the victim was resting. While grabbing his waistband and motioning that he had a gun, the minor threatened to kill the victim and everyone in the house. The victim jumped out a window and over a fence. The minor was arrested in front of the victim's home.

A new wardship petition filed March 5, 2012, alleged the minor committed robbery, criminal threats, attempted first degree burglary, and three counts of first degree burglary. On May 18, 2012, the minor entered a negotiated admission to criminal threats and two counts of first degree burglary in exchange for dismissal of the remaining allegations. The court continued the minor as a ward of the court, removed him from the custody of his mother, reinstated probation, ordered the minor to serve 85 days in juvenile hall with credit for time served, and ordered the minor placed in a Level A facility.

On July 17, 2012, the minor was placed at Tahoe Turning Point (TTP) in South Lake Tahoe. On March 29, 2013, the minor graduated from TTP. The court continued probation with the minor placed in the mother's custody.

A new wardship petition filed August 23, 2013, alleged the minor violated probation by remaining away from home for more than 48 hours without permission, by having been suspended from school for misconduct, and by using marijuana. On September 6, 2013, the minor entered a negotiated admission that he remained away from home without permission in exchange for dismissal of the remaining allegations. The court continued the minor as a ward of the court and ordered that the minor serve 15 days in juvenile hall with credit for two days served.

On October 9, 2013, the minor was suspended from school for five days for being under the influence of alcohol and being in possession of a bottle filled with gin. On

October 15, 2013, the probation officer met with and admonished the minor about the suspension and advised that he would be sanctioned for his poor behavior. On October 21, the minor was suspended from school for one day for refusing to give the campus monitor his cell phone after having previously violated the rule about electronic devices. On October 30, 2013, the minor's mother reported to the probation officer that the minor's behavior was "beyond her control," stated that the minor did not follow her directions, returned home whenever he wanted, stayed one overnight away from home without permission, and was using marijuana based on evidence she found in her car and the garage. On October 31, 2013, the probation officer met with and advised the minor to follow his mother's directives and that a violation of probation would be filed if his behavior did not improve. The minor drug tested positive for marijuana. On November 6, 2013, the principal of the minor's school informed the probation officer that the minor would be suspended from school for possession of marijuana and drug paraphernalia on school grounds. When the minor was informed he was suspended, he left the school grounds. The probation officer found the minor walking near his home. A probation search of the minor revealed a one-gallon Ziploc bag containing 30.1 grams of marijuana and packaging material. The minor was booked into juvenile hall and was evaluated as having high needs and a high risk to reoffend according to a Positive Achievement Change Tool (PACT).

A new wardship petition filed November 7, 2013, alleged the minor violated probation by having remained away from home overnight without permission, by having been twice suspended from school for misconduct, by using marijuana, and by possessing less than an ounce of marijuana.

A November 14, 2013, probation report discussed the minor's participation in "Wraparound" services, adjustment to probation, his family situation, and his lack of progress in school. Florence Charlie, a River Oak Center for Children facilitator, stated that she had been working with the minor since June 2013. During the first two months,

4

the minor's needs were assessed. Thereafter, the minor was absent without leave during part of August and September. In October, he started receiving weekly services and was open and receptive. Charlie planned to have the minor assessed for alcohol and drug treatment. Charlie noted that another treatment goal was school improvement. Although the minor's probation officer believed the minor should be committed to juvenile hall for his probation violations, the probation officer noted that the minor had a " 'huge marijuana problem.' " Reporting that the minor was "not out of her control," the minor's mother did not believe placement was required. She claimed he was helpful around the house and his behavior had improved since his return from Level A placement. She claimed the minor's friends were a good influence and that the minor was often late coming home, but only absconded one time when he went to Los Angeles in August. The mother admitted that the minor had "issues" with marijuana and alcohol. She did not know where the minor obtained the marijuana. The minor was in the 11th grade and currently had four " 'F's,' " 26 unexcused class periods, and 13 times being late since October 2, 2013. The report noted the minor's suspensions for his possession of gin and failure to give the campus monitor his cell phone. While housed in juvenile hall, the minor had no documented incidents, participated in the program in the unit, earned all the points while in the unit, and that he was " 'eager to make his Honor Level.' " The probation officer recommended 45 days in juvenile hall and 45 days on electronic monitoring.

On November 18, 2013, the minor entered a negotiated admission that he had been suspended from school in exchange for dismissal of the remaining allegations with an agreement the dismissed allegations could be considered by the juvenile court at the dispositional hearing. The court re-referred the matter to probation and to the Interagency Management Authorization Committee (IMAC) for a Level B evaluation.

On December 4, 2013, after meeting with probation, the prosecutor, the public defender, the minor's mother and his aunt, IMAC recommended Level B placement for

the minor at Clarinda Academy in Iowa.  IMAC explained:  "The Committee's recommendation is largely based on the fact that, although the minor has received extensive services since being placed on Probation in 2009, including placement at Tahoe Turning Point, which offered a substance abuse treatment program, he has continued to violate his Probation on numerous occasions for substance abuse and drug possession behaviors.  The minor's prior violations have also included removing his ankle monitor, absconding from home and receiving multiple school suspensions for the possession of alcohol, drugs and drug paraphernalia while on school grounds.  The Committee is concerned that the minor has not rehabilitated and believes that the minor has the best chance of benefiting from an out-of-state program that will discourage his abscond behavior and offer him the structure, supervision and treatment, including substance abuse treatment and educational services, that he continues to requires [*sic*] for redirection and rehabilitation.  Additionally, Clarinda Academy will welcome and support the minor's family's involvement in his treatment so that reunification can occur upon graduation from the program."  IMAC found other alternatives not suitable:  "Other alternatives were considered, but ruled out due to the fact that the minor continued to violate the terms of his Probation in the care of his mother and the Committee was concerned that the minor would abscond from an in-state placement."

The probation report dated December 5, 2013, recommended that the court find that reasonable efforts had been made to prevent the minor's removal from parental custody based on the fact that the minor had been supervised by probation for 28 months, he had received counseling from Wraparound, River Oak Center for Children, he had participated in DEJ, wardship, juvenile hall, home supervision, community service, and, although not mentioned, Level A placement.  Probation also recommended that the court find that in-state facilities are unavailable to meet the needs of the minor, institutional care in another jurisdiction was in the best interest of the minor and would not produce

6

undue hardship, and the out-of-state facility is licensed, inspected, and met the requirements of Family Code section 7911.1.

A contested dispositional hearing occurred on December 18, 2013. At the hearing, the prosecutor presented no witnesses, arguing that based on the minor's history, he needed structure to succeed, as evidenced by his behavior in juvenile hall and Level A placement, and without structure, he has issues with marijuana and absconding. The prosecutor requested that the court follow the IMAC recommendation for Level B placement to provide the structure the minor needed to develop and mature. The prosecutor believed that Level A placement and juvenile hall would be insufficient because the minor needed more than a "Band-aid," he needed a "permanent fix."

The minor called two witnesses to testify. Jennifer Eichele, a River Oak Center for Children therapist, saw the minor at least 20 times since May 2013. Charlie had seen the minor about 20 times as well but was no longer a therapist at River Oak Center for Children, having accepted a position at another agency. One of the treatment goals is to improve the minor's communication with his mother and his ability to follow rules and directives. Eichele had observed an "enormous change" in the minor's maturity level while in juvenile hall, having reflected on his life and goals and was highly motivated. Eichele believed that the minor had a "solid relationship" with his mother and it would be a "huge detriment" if he were removed from his mother's custody.

The minor's mother testified that the minor's behavior had improved since returning from TTP, although acknowledging that he had used marijuana and that he was receiving counseling after school. She believed the minor had made a lot of progress since being in juvenile hall. She felt counseling and other services were working because the minor had not "committ[ed] any new crimes," having had "one or two violations." The mother claimed the minor had family support. The mother blamed the high school the minor attended as the "real problem" in the minor's life. The minor was known in the area and had old friends from elementary and junior high school, bad influences at the

school. The mother wanted the minor to stay at home and that an out-of-state placement would be inappropriate because she would be unable to visit. On cross-examination, the mother admitted that the minor achieved A's and B's while at TTP. She also admitted that the minor had left the Sacramento area on August 21, 2013, and went to the Los Angeles area. He had also been gone overnight on October 20, 2013, but mother claimed the minor had been at her sister's house. She did not recall reporting on October 30, 2013, that the minor was beyond her control.

While the minor performed well in placement and in the hall, the court noted that when the minor had "the freedom and flexibility of being at home . . . he continues to make poor choices . . . which this court finds completely unacceptable any violation of his probation." The court found that continuance in the home of the minor's mother would be contrary to the minor's welfare and that he had failed to reform. The court found that in-state facilities were unavailable and inadequate to meet the needs of the minor. Noting IMAC's recommendation for a Level B placement, the court noted that the IMAC committee is "staffed from mental health, school districts, Alta Regional, CPS, County Probation, and Officer of Education" and that when it convenes, "there is a discussion not only about the recommendations . . . as to whether or not level B is to be considered but whether or not there are, in fact, other level A or in-state facilities that are available to meet his needs." The court determined that the minor's placement out-of-state at Clarinda Academy in Iowa was in the minor's best interest and will not produce an undue hardship, the facility was licensed, inspected, and met the requirements of Family Code section 7911.1. The court continued the minor as a ward of the court, removed him from the custody of his mother, and placed the minor at a Level B facility, Clarinda Academy in Iowa. The court declared the minor's maximum confinement time to be nine years six months.

DISCUSSION

The minor contends the juvenile court abused its discretion in placing him at an out-of-state facility. We disagree.

Pursuant to Welfare and Institutions Code section 727.1, subdivision (b)(1), a court may not order out-of-state placement unless "[i]n-state facilities or programs have been determined to be unavailable *or* inadequate to meet the needs of the minor." (Italics added.) The mere existence of an in-state facility does not require the court to place the minor in-state. (*In re Oscar A*. (2013) 217 Cal.App.4th 750, 757 (*Oscar A.*).)

" 'We review a juvenile court's commitment decision for abuse of discretion, indulging all reasonable inferences to support its decision.' [Citation.] ' "[D]iscretion is abused whenever the court exceeds the bounds of reason, all of the circumstances being considered." ' [Citations.] We will not disturb the juvenile court's findings when there is substantial evidence to support them. [Citation.] ' "In determining whether there was substantial evidence to support the commitment, we must examine the record presented at the disposition hearing in light of the purposes of the Juvenile Court Law." ' [Citation.]" (*Oscar A., supra,* 217 Cal.App.4th at pp. 755-756.) These purposes include the best interests of the child, rehabilitation, the protection and safety of the public, and punishment. (Welf. & Inst. Code, § 202, subds. (a), (b); *In re S.S.* (1995) 37 Cal.App.4th 543, 550.)

The minor argues that the probation officer in his case, as contrasted with the probation officer in *Oscar A.*, *supra*, 217 Cal.App.4th at pages 755, 757, did not attempt to locate in-state facilities for him. And unlike the minor in *Oscar A.* whose performance at four in-state facilities was "abysmal" (*id*. at pp. 753-754), the minor here argues his performance at the one and only in-state facility "exceed[ed] all expectations."

The minor misplaces his reliance upon *Oscar A.* We do not read *Oscar A.* as setting forth the minimum efforts required prior to placing a minor in an out-of-state placement. The mere existence of in-state facilities does not mean an out-of-state

9

placement is an abuse of discretion. (*Oscar A., supra,* 217 Cal.App.4th at p. 757.) Moreover, each case is decided on its own facts and reviewed for abuse of discretion. (Welf. & Inst. Code, § 725.5.)

Here, the minor had a significant history of offenses, including possession of marijuana, criminal threats, and three counts of first degree burglary. The minor also had a significant history of probation violations, including using marijuana, drug testing for marijuana, absconding from home, and being suspended from school for being under the influence of alcohol, possessing alcohol, violating school rules with respect to electronic devices, and possessing marijuana and drug paraphernalia. Home seemed to be a problem for the minor in that he refused to follow his mother's directives, absconded, and abused marijuana and alcohol.

The IMAC recommended a Level B placement, noting the minor had received extensive services since 2009, including a Level A placement and substance abuse treatment, but continued to violate probation by possessing drugs and alcohol and absconding. The IMAC was concerned that the minor had not rehabilitated and believed an out-of-state program would be in his best interests by discouraging abscond behavior and providing structure, supervision, and treatment for drugs and alcohol. The IMAC ruled out in-state facilities as not suitable due to the minor's continued violations of probation and absconding.

The juvenile court recounted that the minor had been placed at many levels of structured placements and received services from several entities but he continued to violate probation, noting that the minor continued to make poor choices when given "freedom and flexibility of being at home . . . ." The minor's history and the IMAC recommendation support the trial court's finding that in-state facilities were unavailable and inadequate to meet the minor's needs. The record supports the conclusion that out-of-state placement was in the minor's best interest, assisting in his rehabilitation, and serving the interest of public safety.

DISPOSITION

The order is affirmed.

    BLEASE    , Acting P. J.

We concur:

    BUTZ    , J.

    MAURO    , J.