Filed 12/31/24  In re T.F. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re T.F., a Person Coming Under the Juvenile Court Law. | C100439 |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>T.F.,<br><br>        Defendant and Appellant. | (Super. Ct. No. JV142680) |

After minor T.F. admitted committing robbery while armed with a firearm, the juvenile court adjudged him a ward of the court and committed him to the Valley Oak Youth Academy (VOYA) program at the Sacramento County secure youth treatment facility for a baseline term of confinement of three years four months.  On appeal, minor contends the juvenile court abused its discretion by committing him to VOYA.

Minor frames his contentions as follows:  (1) "the court failed to make any findings based on any evidence presented at the disposition hearing that [minor] would benefit from a

1

commitment to the VOYA based on the crime that he committed" and (2) "there was insufficient evidence to support a finding that less restrictive alternatives such as residential mental health treatment programs, residential drug programs, educational placements, a local commitment, or other out of state residential placements would have been ineffective or inappropriate." We conclude the juvenile court made the required factual findings and those findings were supported by substantial evidence. We will affirm the judgment.

## I. BACKGROUND

Minor and J.M. met victims M.D. and K.F. at an apartment complex so that M.D. could exchange a gun that he had previously obtained for a different gun. M.D. put the gun on an electrical box outside the apartment complex. Minor grabbed the gun, which began a struggle with M.D. for the gun. J.M. then pulled down a mask to cover his face, pulled out a gun, and shot M.D. and K.F. Minor and J.M. then took M.D.'s gun and other property belonging to the victims and fled the scene. M.D. died from a gunshot wound to his chest. K.F., who survived but was paralyzed, was also shot in the chest and reported to police officers who arrived at the scene that he could not move his legs.

Minor admitted committing robbery while armed with a firearm. The probation officer then prepared a report on minor's background which included a recommended disposition outlined below. The report noted that, prior to the robbery, minor had behaved poorly at school and at home, often leaving home for days at a time to stay with friends his mother did not approve of. The most recent time minor ran away from home prior to the robbery, he was gone for approximately two months but would text his mother regularly to tell her he was okay. Minor had been expelled from high school for hitting an administrator during a fight with another student. Minor, his siblings, and his mother had been abused by his mother's ex-boyfriend. Minor's mother enrolled him in counseling once, but he "did not do well participating in the online counseling sessions and refused to continue to participate." Minor expressed a desire for counseling to deal with past trauma and marijuana use.

Based on this information, the probation officer concluded that "minor would benefit from a high level of [s]upervision." Accordingly, the probation officer recommended minor:

2

serve 100 days in juvenile hall, with credit for 157 days served, followed by 90 days of electronic monitoring; complete 40 hours of community service; complete a drug and alcohol assessment and then complete "a program of professional education or counseling, as indicated by the results of the assessment, to address the issues of alcohol/drug-abuse by a provider approved by the Probation Officer"; and "enroll in and successfully complete community based intervention services to address the identified areas of need."

Minor's counsel argued the juvenile court should follow the probation officer's recommendation and stated that minor's parents had been "looking at programs and counseling and therapy available in the community" and looking at the resources provided by the probation officer. Minor's counsel did not offer specific details about those programs.

The People argued the court should commit minor to the VOYA program based on: the dangerousness of minor engaging in firearm dealing; minor's actions that precipitated the shooting of two people, killing one and paralyzing the other; minor's prior bad behavior, including fighting and getting expelled from high school and fighting in juvenile hall; minor's extensive marijuana use; minor's history of running away from home; and the extensive programming available in the VOYA program, which would be tailored to minor's special needs. The People offered details about many different VOYA programs, including a drug program, employment programs, and "trauma-focused, cognitive-based therapy," which would involve a specialized counseling plan developed for minor.

After considering this information and hearing testimony from relatives of the victims, the juvenile court considered the criteria in Welfare and Institutions Code[1] section 875, subdivision (a)(3) to determine whether to commit minor to the VOYA program or whether a "less restrictive, alternative disposition" would be suitable. The court found the first criterion, "[t]he severity of the offense or offenses for which [the ward] has been most recently adjudicated, including the ward's role in the offense, the ward's behavior, and harm done to victims," weighed in favor of a VOYA commitment. (§ 875, subd. (a)(3)(A).) For the second

---

[1]     Undesignated statutory references are to the Welfare and Institutions Code.

criterion, "[t]he ward's previous delinquent history," the court considered minor's history of bad behavior but found that "because there was no formal delinquent history, there actually is no evidence to show the [c]ourt what intervention would be successful," so this factor was neutral. (§ 875, subd. (a)(3)(B).)

For the third criterion, "[w]hether the programming, treatment, and education offered and provided in a secure youth treatment facility is appropriate to meet the treatment and security needs of the ward," the court determined that the evidence of VOYA programs showed they met minor's treatment and security needs, which weighed in favor of a VOYA commitment. (§ 875, subd. (a)(3)(C).) For the fourth criterion, "[w]hether the goals of rehabilitation and community safety can be met by assigning the ward to an alternative, less restrictive disposition that is available to the court," the court found that the "goal of community safety outweighs the goal of rehabilitation in a less restrictive setting," which weighed in favor of a VOYA commitment. (§ 875, subd. (a)(3)(D).)

For the fifth criterion, "[t]he ward's age, developmental maturity, mental and emotional health, sexual orientation, gender identity and expression, and any disabilities or special needs affecting the safety or suitability of committing the ward to a term of confinement in a secure youth treatment facility," the court observed that minor would be turning 18 soon and that if minor had committed these offenses after his 18th birthday that minor likely would be in adult court facing much more serious consequences. The court expressed concern that if minor received services in the community, and committed a crime, that minor would "lose the opportunity for rehabilitation in the juvenile court." In addition, the court recognized that minor had special needs, for example, ADHD, which could be addressed by VOYA programs. (§ 875, subd. (a)(3)(E).) Because four of the five criteria weighed in favor of a VOYA commitment, the court found that the appropriate disposition was to commit minor to the VOYA program.

At the next hearing, the juvenile court considered what the baseline term for minor's commitment should be, within the range of one and one-half to four and one-half years set by section 875, subdivision (b)(1) and rule 5.806(d) of the California Rules of Court. The People

4

argued the juvenile court should impose the maximum term, based on the facts introduced at the prior hearing. Minor's counsel argued the minimum term would be sufficient to meet minor's rehabilitative goals, acknowledging that even counsel was "a little surprised" by probation's recommendation given the injuries to the victim's family.

The juvenile court asked minor's counsel for more detailed information about what was necessary to rehabilitate minor and how long that would take. Minor's counsel argued that minor had only the intent to steal, not to hurt the victims, which would take less time to rehabilitate. Minor's counsel acknowledged minor had mental health issues that needed to be addressed but was unable to offer the court an estimate for how long that would take. Instead, minor's counsel suggested his behavior had been relatively good since the offense, which suggested a baseline term at the lower end of the required range. The People responded that the court could easily reduce the baseline term if minor made progress but could not easily increase the baseline term, which counseled in favor of establishing a longer baseline term to ensure enough time for rehabilitation.

Based on minor's past behaviors, his need for multiple types of therapy, and his need for special educational services, the juvenile court determined that three years four months was the appropriate baseline term. The court also specified that the maximum term of commitment was four years and minor had earned 165 days of credit for time served in custody.

Minor timely appealed from the final dispositional order.

## II. DISCUSSION

Minor contends the juvenile court abused its discretion both by committing him to the VOYA program rather than releasing him to live at home and by setting a baseline term of three years four months. Specifically, minor argues: (1) "the court failed to make any findings based on any evidence presented at the disposition hearing that [minor] would benefit from a commitment to the VOYA based on the crime that he committed" and (2) "there was insufficient evidence to support a finding that less restrictive alternatives such as residential mental health treatment programs, residential drug programs, educational placements, a local

5

commitment, or other out of state residential placements would have been ineffective or inappropriate." We disagree.

"We review the juvenile court's commitment decision for abuse of discretion, indulging all reasonable inferences to support its decision." (*In re N.C.* (2019) 39 Cal.App.5th 81, 85.) " ' "[D]iscretion is abused whenever the court exceeds the bounds of reason, all of the circumstances being considered." ' " (*In re Oscar A.* (2013) 217 Cal.App.4th 750, 755.) We will affirm if "we find credible, substantial evidence supporting the juvenile court's findings of a probable benefit to minor from a [secure youth treatment facility] commitment and of the inappropriateness or ineffectiveness of the proposed less restrictive alternatives." (*In re N.C.*, at p. 86.)

Here, the juvenile court's determinations that the VOYA program would benefit minor and that less restrictive alternatives were inappropriate are well supported. The court reviewed a detailed list of VOYA programs that would provide exactly the services minor needed: trauma-focused therapy, drug programs, employment, and decision making training to help minor avoid making similar bad decisions in the future.

In contrast, minor provided no details about any specific community programs to meet these needs, with minor's counsel simply stating, for example, "There are counseling services that are available to him" and referencing the "exhaustive report" of probation. The probation report, however, does not provide details of specific programs either, instead making broad recommendations like "complete a program of professional education or counseling . . . to address the issues of alcohol/drug-abuse by a provider approved by the Probation Officer"; and "enroll in and successfully complete community based intervention services to address the identified areas of need." Minor's counsel made a vague reference to what appears to be a counseling program affiliated with the University of California, Davis, but, when asked for more specifics about the program, counsel admitted the program was voluntary and consisted of "an assessment [to] try to get an idea of what services [minors] can benefit from . . . and then when they ultimately get out, they can get tied in with providers."

The contrast between this lack of detail provided to the juvenile court and the specificity with which the alternatives addressed minor's needs would likely be enough by itself to justify the VOYA commitment. But here, the court had additional reasons for finding a less-restrictive alternative to be inadequate. Minor had a history of being defiant and failing to follow rules that included being expelled from high school and running away from home for two months. Minor's mother had already attempted to enroll him in counseling, but he "did not do well participating in the online counseling sessions and refused to continue to participate." Even the probation officer who recommended a more lenient disposition had concluded that "minor would benefit from a high level of [s]upervision." In these circumstances, the court reasonably decided to commit minor to the VOYA program.

We likewise conclude the juvenile court's decision to set a baseline term of three years four months was not an abuse of discretion. Neither party could provide the court with an estimate for how long minor's rehabilitation would take, so the court based its determination on minor's need for an individualized education plan and special education services, which he could receive until he turned 21 years of age. Again, this was a reasonable determination based on the evidence provided by the parties.

None of the other arguments minor raises establish an abuse of discretion. For example, minor contends the juvenile court could have committed minor to a lengthier juvenile hall commitment instead of the VOYA program. But minor did not ask the juvenile court to commit him to juvenile hall for any additional time and failed to offer evidence regarding the differences in programming and security between juvenile hall and the VOYA program.

Finally, minor also contends the court improperly focused on punishment and retribution and "gave an inordinate amount of consideration or weight to the crimes committed by J.M. to [minor]." The record, however, belies this contention. The court thoroughly considered the evidence of minor's rehabilitative needs and based its decision on the placement that best provided matching rehabilitative services for minor. In doing so, the court advised minor that minor's progress was "incredibly important," emphasizing that the court had discretion at each six-month review to consider reducing minor's baseline term by up to six

7

months.  Because minor has failed to establish an abuse of discretion, we will affirm the juvenile court's disposition.

## III.  DISPOSITION

The dispositional order committing minor to the VOYA program for three years four months is affirmed.

/s/
WISEMAN, J.*

We concur:

/s/
DUARTE, Acting P. J.

/s/
KRAUSE, J.

---

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.