Filed 7/14/25  In re S.D. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re S.D., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>S.D.,<br><br>    Defendant and Appellant. | F088155<br><br>(Super. Ct. No. JW135696-00)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Marcus Cuper, Judge.

Candice L. Christensen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Darren K. Indermill and John W. Powell, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Appellant S.D. challenges the juvenile court's order setting his baseline term of confinement at seven years after finding true he committed first degree murder, first degree robbery and that the murder was committed during the perpetration of a robbery.

On appeal, S.D. contends the juvenile court abused its discretion when it set his baseline term of confinement at seven years rather than at six years. The People disagree and contend the juvenile court exercised reasonable discretion in setting the baseline term of confinement at seven years. We conclude S.D. fails to demonstrate the juvenile court abused its discretion and affirm the judgment.

## BACKGROUND

D.K. Sr. lived in a house on University Avenue in Bakersfield with his son, D.K. Jr., his daughter J.K. and D.K. Jr.'s children F.K., Jo.K. and B.K. D.K. Jr. was blind in one eye. In August 2022, J.K. invited two homeless teenagers, S.D. and K.M., to stay with them. The house had one bedroom that was described as the "safe room" with an ammunition reloader and two safes that contained about 40 guns, jewelry, money and some silver coins. D.K. Sr. kept a shotgun in his bedroom, either under the mattress or against the wall.

On August 21, 2022, Jo.K. saw S.D. and K.M. playing with D.K. Sr.'s shotgun and heard them shooting a gun three or four times outside in front of the house. S.D. and K.M. went back inside the house and began kicking the door to the safe room trying to get in. Jo.K. heard S.D. and K.M. grabbing items inside the safe room, and heard "dinging sound[s]" like shotgun shells hitting the floor. S.D. and K.M. went into the backyard and Jo.K. heard two more gunshots. Jo.K. heard S.D. talking on the phone in the backyard and heard him say, "There's safes in the room and I got in." Jo.K. observed a hole in the bottom of the door to the safe room. When F.K., B.K., and D.K. Jr. came home, they noticed that the safe room door had been damaged. The bottom of the door

2.

was broken in such a way that a person would have been able to crawl through it. Jo.K. told D.K. Jr. that S.D. and K.M. had entered the safe room and had fired guns outside.

Around 11:00 p.m., J.J., picked up A.M. in a vehicle and drove to the University Avenue residence to rob it. Around that time, B.K. overheard S.D. on the phone in the living room saying, "you [can] come over. We're ready. We have the gun." Approximately 30 minutes later, F.K. and B.K. were in their bedroom with D.K. Jr. when they heard a loud bang and saw two masked individuals enter the room, one carrying D.K. Sr.'s shotgun. The intruder with the shotgun, A.M., pointed it at D.K. Jr.'s face and said "give me everything you've got .…" D.K. Jr. then grabbed the shotgun barrel and tried to take the shotgun from A.M. While they struggled over the shotgun, the second intruder, J.J., punched D.K. Jr. in the back of the head and stabbed D.K. Jr. in the back multiple times with a screwdriver. F.K. noticed S.D. in the room watching and egging on the intruders saying "[G]et that [N*****]." F.K. recalled screaming for S.D. to help her father, but S.D. "completely ignored" her.

During the struggle, D.K. Jr. eventually gained some leverage on the shotgun, pushed the barrel upward, pulled the trigger and fired it straight into the air, hitting A.M. in the head. After the gun was shot, the second intruder, J.J., ran out of the house and fled the scene. S.D. fled the scene, but later returned and surrendered to the police.

A.M. died at the scene from the shotgun injury to his head. DNA evidence found on the screwdriver used to stab D.K. Jr. showed J.J. was a potential contributor.

Before the incident, F.K. helped S.D. create a new Instagram account using F.K.'s phone number. After the robbery, F.K. logged into S.D.'s Instagram account using her phone number and saw S.D. posted a video in his story about the ammunition that D.K. Sr. kept in the safe room. Instagram messages revealed S.D. conspired with A.M. and J.J. to rob the house and gave them the green light on the night of the incident. S.D.'s messages revealed the person that was home did not have a gun on him, was blind in one eye, there was money and more guns in the house and it was okay to come in. Messages

3.

between S.D., A.M. and J.J. revealed the planning involved to rob the house, noting there were three safes in the house with a lot of guns and money, that S.D. would kick open the door to the safe room ahead of time, that A.M. and J.J. needed to use a car, that it had to be that night because the dad was gone and only the son who is blind in one eye was there. Before the incident, S.D. indicated they could come right now, that the adult did not have a gun on him, and to let S.D. know when they got to the house.

On March 23, 2023, an amended original juvenile wardship petition was filed, pursuant to Welfare and Institutions Code section 602,[1] alleging S.D. committed first degree murder (Pen. Code, § 187, subd. (a), count 1), with an enhancement for committing the crime while perpetrating a robbery (*id.*, § 189), and first degree robbery within a dwelling house while acting in concert with others (*id.*, § 213, subd. (a)(1)(A), count 2).

A joint contested jurisdictional hearing for S.D. and J.J. began January 3, 2024. The juvenile court found counts 1 and 2 against S.D. true beyond a reasonable doubt, and the robbery enhancement true. At the May 21, 2024 dispositional hearing, the court adjudged S.D. a ward of the court and committed him to the APEX academy for a baseline term of seven years. S.D. filed a timely notice of appeal.

## DISCUSSION

### I.     The Juvenile Court Did Not Abuse its Discretion

S.D. contends the juvenile court abused its discretion in setting his baseline term of confinement at seven years, arguing there was no substantial evidence that his rehabilitation would require such lengthy commitment. The People contend the juvenile court exercised reasonable discretion, supported by the record.

---

[1]     All undesignated statutory references are to the Welfare and Institutions Code.

## A.    Relevant Factual and Procedural History

The probation department concluded in its report that the violent nature of S.D.'s offenses, his well-documented and ongoing propensity for violence, and his lack of remorse warranted a commitment to APEX Academy. As to the appropriate baseline term of confinement, probation noted that S.D.'s baseline range is four to seven years due to his offenses. Probation recommended S.D.'s "baseline term be set at seven years based upon the circumstances and gravity of the commitment offense, [S.D.'s] mental health needs, the confinement time considered reasonable and necessary to achieve the rehabilitation of [S.D.], and [S.D.'s] development history …."

S.D.'s counsel disagreed with the probation officer's recommendation of a seven-year baseline term of confinement and argued that a baseline term of six years would be more appropriate. The prosecutor requested that the juvenile court follow the probation officer's recommendation and set the baseline term of confinement at seven years.

The juvenile court noted that it considered the arguments from counsel, the victim impact statements, S.D.'s psychological assessment, a letter written by S.D., and the probation officer's report. The court explained it considered this information, the fact that S.D. was a minor under the age of 18 years, and 14 years or older, at the time of the commission of the offenses for which he is being committed, the severity of the offenses for which he has been most recently adjudicated and ordered consecutive periods of confinement. The court considered the individual facts and circumstances of the case in determining the maximum period of confinement, ordered that S.D. be committed to the APEX Academy and set S.D.'s maximum age of jurisdiction at 25 years old.

The court then discussed its determination of the appropriate baseline term of confinement as follows:

> "The offense for which [S.D.] is before the Court falls under Category A, with a base line term range of four to seven years. In establishing a base line term of confinement, the Court has considered the

5.

California Rules of Court,[2] [rule] 5.806(b)(1) through (4), all of the factors listed. And in order to meet the developmental and treatment needs of [S.D.] and to prepare him for a period of supervision in the community, the base line term is set at seven years.

"When determining the base line term, the Court has considered the circumstances and gravity of the offense, [S.D.'s] history in the juvenile justice system, the confinement time necessary to rehabilitate him, and his developmental history."

Additionally, the court added that it determined that "[l]ess restrictive programs would be unsuitable in meeting rehabilitation and community safety goals" based on "the factors in section 875[, subdivision ](a)(3), which consists of the minor's age, developmental maturity, mental and emotional health, sexual orientation, gender identity and expression, disabilities, and special needs." The court stated it was "fully satisfied that the treatment and security needs of [S.D.] will be met by the programming, treatment, and education provided by APEX program," which it felt was an appropriate plan.

Near the conclusion of the hearing, the juvenile court addressed S.D. directly, stating:

"[S.D.], I gave you a base line term of seven years because you caused an incredible amount of harm in this case, and I think there's an extensive amount of programming that you're going to need to go through.

"Part of my job is to protect the community at these sentencings. They're also called dispositions. In juvenile court, it's a balance of protecting the community and rehabilitation for you. And based on the crime before this Court, the Court believes it's going to take the full seven years to get that done; however, the amount of time you actually spend at APEX is largely going to be dictated by the amount of effort you put into the program. Meaning, you can get out much earlier if you actually put in the effort and actually try to make the change.

"We've got a lot of kids in there that have committed the exact same crime, and a lot of them get out early because they take it seriously. Other

---

**2**      All undesignated rules are to the California Rules of Court.

kids go in there, and they don't really take it seriously, and they cause problems, and they do the full seven years.

"So I'm going to encourage you, when you get to APEX, to take the program seriously. And it's everyone's goal at this point for you to get rehabilitated. And if you do that, when you come back every six months for a review, you can have time taken off your sentence."

Neither S.D. nor his counsel objected to the baseline term of seven years.

### B.      Standard of Review

A juvenile court's commitment decision is reviewed for abuse of discretion. (*In re Robert H.* (2002) 96 Cal.App.4th 1317, 1330 (*Robert H.*).) The reviewing court will ""'"indulge all reasonable inferences to support the decision of the juvenile court and will not disturb its findings when there is substantial evidence to support them."'" (*Ibid.*)

The abuse of discretion standard of review "asks in substance whether the ruling in question 'falls outside the bounds of reason' under the applicable law and the relevant facts [citations]." (*People v. Williams* (1998) 17 Cal.4th 148, 162; accord, *In re Oscar A*. (2013) 217 Cal.App.4th 750, 755 [""'"[D]iscretion is abused whenever the court exceeds the bounds of reason, all of the circumstances being considered."'"].) "'A [juvenile] court [also] abuses its discretion when the factual findings critical to its decision find no support in the evidence.'" (*In re Khalid B*. (2015) 233 Cal.App.4th 1285, 1288.)

### C.      Applicable Law

Effective May 14, 2021, Senate Bill No. 92 (2021–2022 Reg. Sess.) added section 875 et seq. to the Welfare and Institutions Code. (Stats. 2021, ch. 18, § 12; *In re J.B*. (2022) 75 Cal.App.5th 410, 427, fn. 2 (dis. opn. of Lie, J.).) "Section 875, subdivision (b)(1), provides that the court must 'set a baseline term of confinement' that 'shall represent the time in custody necessary to meet the developmental and treatment needs of the ward and to prepare the ward for discharge .…'" (*In re Jose R*. (2024) 102 Cal.App.5th 839, 846, fn. omitted (*Jose R.*)) "The baseline term is subject to potential

downward modification … during progress review hearings that must be held at least once every six months.  (§ 875, subds. (b)(1) & (e).)"  (*Id.* at pp. 846–847.)

Effective July 1, 2023, the juvenile court was required to set the baseline term using an offense-based matrix developed by the Judicial Council.  (§ 875, subds. (b)(1) & (h); rule 5.806.)  Within this range, the juvenile court must review and consider the following criteria in order to select the individual baseline term, and may give weight to any relevant factor listed under the criteria:

(1) The circumstances and gravity of the commitment offense, which includes: (A) the severity and statutory degree of the offense for which the youth has been committed to the secure youth treatment facility; (B) the extent of harm to victims occurring as a result of the offense; (C) the role and behavior of the youth in the commission of the offense; (D) the role of coparticipants or victims in relation to the offense; and (E) any exculpatory circumstances related to the commission of the offense including peer influence, immaturity or developmental delays, mental or physical impairment, or drug or alcohol impairment.

(2) The youth's prior history in the juvenile justice system, which includes: (A) the youth's offense and commitment history; (B) the success of prior efforts to rehabilitate the youth; and (C) the effects of the youth's family, community environment, and childhood trauma on the youth's previous behavior that resulted in contact with the juvenile justice system.

(3) The confinement time considered reasonable and necessary to achieve the rehabilitation of the youth, which includes:  (A) the amount of time the youth has already spent in custody for the current offense and any progress made by the youth in programming and development; (B) the capacity of the secure youth treatment facility to provide suitable treatment and education for the youth; (C) special needs the youth may have in relation to mental health, intellectual development, academic or learning disability, substance use recovery, and other special needs that must be addressed during

8.

the term of confinement; (D) whether the youth is pregnant, is a parent, or is a primary caregiver for children; and (E) the availability of programs and services in the community to which the youth may be transitioned from secure commitment to less restrictive alternatives.

(4) The youth's developmental history, which includes: (A) the age and overall maturity of the youth; (B) developmental challenges the youth may have in relation to mental health, intellectual capacity, educational progress or learning disability, or other developmental deficits, including specific medical or health challenges; (C) the youth's child welfare and foster care history, including abandonment or abuse by parents or caregivers or the incarceration of parents; (D) harmful childhood experiences, including trauma and exposure to domestic or community violence, poverty, and other harmful experiences; and (E) discrimination experienced by the ward based on gender, race, ethnicity, sexual orientation, or other factors. (Rule 5.806(b).)

"The court must select a baseline term that is no longer than necessary to meet the developmental needs of the youth and to prepare the youth for discharge to a period of probation supervision in the community.… The court must state on the record its reasons for selecting a particular term, referencing each of the criteria and any factors the court deemed relevant." (Rule 5.806(b).)

The Advisory Committee comment to rule 5.806 notes that "the committee sought to accomplish three primary goals that should serve as objectives for the court when setting a baseline term: positive youth development, public and community safety, and the establishment of flexible and fair commitment terms." (Advisory Com. com., rule 5.806.) "A primary objective of a commitment to a secure youth treatment facility must be an evidence-based and trauma-responsive effort to promote healthy adolescent development." (*Ibid*.) "The flexibility inherent in the matrix is intended to result in a baseline term of commitment that is no longer than necessary to protect the public but is of sufficient length to assure the victim and the community that the harm committed can

9.

be redressed by the juvenile justice system in a developmentally appropriate manner and thus reduce the need for the youth to be transferred to criminal court." (*Ibid.*)

**D.     Analysis**

Substantial evidence supports the juvenile court's decision that S.D. should be committed to APEX for a seven-year baseline term of confinement. The record shows the court considered the factors under rule 5.806(b) in concluding that a seven-year baseline term of confinement was required in order to meet S.D.'s developmental and treatment needs. Therefore, S.D. fails to show the court abused its discretion in setting a baseline term of seven years.

Here, the record demonstrates the juvenile court followed the applicable rules and criteria in setting S.D.'s baseline term at seven years. Rule 5.806(b) states, "the court must review and consider each of the criteria listed in paragraphs (1) through (4)[, and] may give weight to any relevant factor, including but not limited to the factors listed below each one." At the hearing, the juvenile court stated that in setting the baseline at seven years, it "considered [rule] 5.806(b)(1) through (4), all of the factors listed." The court expressed that it had "considered the circumstances and gravity of the offense, [S.D.'s] history in the juvenile justice system, the confinement time necessary to rehabilitate him, and his developmental history." (See rule 5.806(b)(1)–(4).)

We examine the record for evidence supporting each factor separately. First, the court considered the circumstances and gravity of the case under rule 5.806(b)(1), which weighed in favor of the seven-year baseline term. S.D. committed a category A offense, which was first degree murder. The crimes involved a home invasion robbery with an unprovoked attack on the victims, which resulted in the death of one of S.D.'s accomplices. The probation report highlights S.D.'s childhood trauma, which may have impacted his thought process and impulse control except these offenses were not the result of impulsive actions. Rather, the home invasion robbery was well planned and

calculated in advance. The court told S.D. that he "caused an incredible amount of harm in this case .…"

Under rule 5.806(b)(2), S.D.'s history also weighed in favor of the seven-year baseline term. The court was aware S.D. had no prior juvenile petitions. However, probation reported S.D. had a history of sexually inappropriate and violent behavior beginning in kindergarten. S.D. had physically assaulted students and staff and had been suspended numerous times. S.D. had been involved in several incidents during his time at the youth detention center. Within one year, S.D. had been involved in approximately 14 fights, tagged his room with gang-related material, possessed contraband, and bragged about his charges. The court was also aware of S.D.'s childhood trauma, which contributed to his behavior. Child Protective Services received 23 referrals in which S.D. was the victim, but also four referrals where S.D. sexually abused his sister.

Significantly, probation noted S.D. expressed no remorse for his actions. S.D. lacked empathy and failed to fully recognize the gravity of his actions or the importance of managing his anger and understanding appropriate boundaries. Probation concluded it was likely that S.D.'s "trauma, unstable living environment, and his association with a criminal street gang since age 13, influenced his participation" in the offenses. This led to S.D. becoming desensitized to violent behavior and having to problems taking a leadership role in carrying out violent offenses. Probation concluded S.D. has "deeply rooted mental health concerns that will take years of treatment in order for [S.D.] to be successfully rehabilitated."

The record further supports the court's imposition of a seven-year baseline term was reasonable and necessary to achieve S.D.'s rehabilitation under rule 5.806(b)(3). The probation officer's report noted that S.D. had been involved in 14 fights during his time at the youth detention center, had been found in possession of an altered toothbrush, which could have been utilized as a weapon, tagged his room with gang-related slogans, and bragged to others about his charges. S.D. also had a history of substance abuse, gang

involvement, and a propensity for violence. The probation officer reasoned the seven-year baseline term was necessary because "It will take time for the mental health team to build rapport, help [S.D.] see the discrepancy between his thinking, beliefs, actions, and values and goals, and get him to the point where he is willing to take responsibility for his actions and is willing to meaningfully participate in treatment. Then it will take extensive treatment to effectuate change in his behavior so he can successfully rehabilitate. It could take years for [S.D.] to get to this point based on his pre-contemplative stage of change, and the extent of treatment he will need to address his trauma, family dynamics, propensity toward violence, gang entrenchment, drug use, and mental health and criminogenic needs."

The last factor under rule 5.806(b)(4), S.D.'s developmental history, also supports the baseline term of seven years. The probation report addresses S.D.'s childhood trauma, including witnessing violence in the home, and being subject to physical abuse, neglect and possible exploitation, which likely desensitized S.D. to violence at a young age. S.D. responded by acting out in violence, such as attempting to strangle another student at school when S.D. was just five years old. S.D. had numerous incidents of fighting, defiance, assaults and disrespecting authority figures. S.D. attributed his criminal behavior to his trauma and unstable living environment, stating that the gang provided him a family and father-figure-type relationships. By turning to a criminal street gang at 13 years old, S.D. was likely exposed to community violence, and his delinquent behaviors were likely reinforced. Participation in the current offenses likely increased his status in the gang, giving him respect and notoriety. Not only will it take time to address these layers in S.D., but it will also be important to address his lack of empathy toward the victims, who suffered mental, emotional and physical trauma as a result of his actions.

Thus, the record contains substantial evidence in support of the juvenile court's decision setting the baseline term at seven years. (See *Robert H.*, *supra*, 96 Cal.App.4th

at p. 1330.) The court considered the relevant factors and set S.D.'s baseline term at seven years "because [he] caused an incredible amount of harm in this case," and concluded that "there's an extensive amount of programming that [S.D. is] going to need to go through." The court's conclusion that it would "take the full seven years" to rehabilitate S.D. is supported by substantial evidence. (See *ibid.*) Accordingly, S.D. fails to demonstrate the court abused its discretion in setting his baseline term at seven years.

Significantly, S.D. does not argue that the juvenile court failed to consider the proper factors under rule 5.806(b). Rather, S.D. discusses the relevant facts before the court and disagrees with the court's decision. Under rule 5.806(b)(1), S.D. states that he was only 14 years old at the time of the offenses, that there is a recognized inherent difference between juveniles and adults for sentencing purposes, and that due to his youth and immaturity, S.D. did not fully appreciate the dangers involved. Under rule 5.806(b)(2), S.D. states this was his first juvenile petition and, thus, there had been no prior efforts to rehabilitate him. S.D. points out his childhood abuse and trauma, which led to his delinquent behavior, agreeing that he is in need of rehabilitation and admitting he deserves to go to APEX. Under rule 5.806(b)(3), S.D. admits that while in detention he was involved in tagging, possession of contraband and 14 mutual fights, but disputes the probation claim that he did not participate in treatment other than meeting with a mental health clinician. S.D. states he participated in alternative program days where he completed worksheets and participated in discussions facilitated by the Reentry, American with Disabilities Act and Programming Unit to help redirect his behaviors in custody. Last, under rule 5.806(b)(4), S.D. concedes his history of aggressive behavior and gang association, but adds that he has a learning disability, attention deficit hyperactivity disorder and began smoking marijuana at 13 years old.

The record shows the juvenile court carefully considered all the evidence and criteria under rule 5.806(b) in imposing the seven-year baseline term. S.D.'s disagreement with the court's ruling based on facts before the court does not establish

13.

that the challenged ruling was an abuse of discretion.  (See *People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 978 [a discretionary sentencing decision will not be reversed merely because reasonable people might disagree, and an appellate court is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge], superseded by statute on other grounds as indicated in *People v. Lynall* (2015) 233 Cal.App.4th 1102, 1108.)  S.D. fails to demonstrate the court's decision was arbitrary or lacking in factual support.  (See *Jose R., supra*, 102 Cal.App.5th at p. 846.)  Accordingly, we cannot conclude the juvenile court abused its discretion.

## DISPOSITION

The judgment is affirmed.


MEEHAN, J.

WE CONCUR:


LEVY, Acting P. J.


FRANSON, J.