Filed 5/13/25  In re W.S. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| In re W.S., a Person Coming Under the Juvenile Court Law. | C100996 |
| THE PEOPLE, | (Super. Ct. No. 23JD3159602) |
| Plaintiff and Respondent, | |
| v. | |
| W.S., | |
| Defendant and Appellant. | |

Following a dispositional hearing, the juvenile court adjudicated minor W.S. a ward of the juvenile court based on true findings he committed the crimes of attempted murder, assault with force likely to cause great bodily injury, and possession of a dirk or dagger.  The juvenile court set the baseline term of confinement at four years.  On appeal, minor contends the juvenile court's finding he had the intent to kill was unsupported by

1

the evidence.  Minor also contends the juvenile court erred by setting his baseline term of confinement at four years.  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

One evening, Z.P. and his girlfriend picked up Z.P.'s girlfriend's brother in a parking lot where other teenagers were gathering.  Once Z.P. parked his truck, three male teenagers, including minor, approached the passenger side of the truck and started flirting with Z.P.'s girlfriend.  This angered Z.P., and Z.P. told the teenagers to step away from his truck and stop flirting with his girlfriend.  The teenagers would not stop and instead acted "passive aggressive" and "hostile," and like they were looking for a fight.

Z.P. got out of the driver's side door, and the three teenagers moved to his side of the truck.  Z.P. showed the three teenagers his butterfly knife and did a quick trick rolling the butterfly knife through his fingers while opening and then closing the blade.  When done with the trick, the butterfly knife was in Z.P.'s right hand in the closed position.  One of the teenagers pointed and laughed and minor put his arm around Z.P.'s shoulders.  Z.P. shrugged minor off him and minor punched Z.P. in the face.  A bystander testified she saw Z.P. push minor, which started the fight.  The same bystander was later stabbed by minor but claimed it was an accident.

After minor punched Z.P. in the face, a fist fight ensued between Z.P. and the three teenagers.  Z.P. was successful in pushing back the teenagers several times before minor pulled a knife.  Z.P. then saw one of the teenagers pull out a gun and point it at him.  Z.P. grabbed the wrist of the teenager pointing the gun and knocked him to the ground.  The fight continued with the third teenager restraining Z.P.'s arms behind his back and minor stabbing him in the abdomen.  The teenager with the gun hit Z.P. on the head with the butt of the gun.  Z.P. was then stabbed again by minor, this time in the neck.  Once stabbed in the neck, Z.P. stopped fighting and walked to his truck to sit.  Minor ran away.  A replica gun was recovered from the scene of the fight.  The fight was recorded by two different devices and played for the juvenile court.

2

At the jurisdictional hearing, minor called a psychologist to testify about his brain development and the results of various tests she administered. The intelligence test demonstrated minor experienced intellectual disabilities, particularly concerning his attention span and ability to perform tasks in a linear fashion. The personality inventory demonstrated minor had low frustration tolerance, impulse control problems, substance abuse issues involving alcohol and cannabis, and acted out through juvenile delinquency. The mental state exam demonstrated minor was of sound mind, while the visual motor test did not indicate minor suffered from neurological or visual integration problems. The psychologist agreed with minor's medical history that diagnosed him with a mood disorder not otherwise specified, meaning he had symptoms of an anxiety or depressive disorder. The psychologist could not confirm the diagnosis from minor's medical history that he suffered from attention deficient hyperactivity disorder. Given minor's intellectual disabilities and brain functioning capability, the psychologist believed minor would likely react aggressively in response to stressful situations and perceived aggressive behavior.

The juvenile court found the evidence did not support minor's claim of self-defense. Particularly, the juvenile court pointed to the video of the start of the fight and noted minor demonstrated no signs of fear. The court noted that, while Z.P. possessed a butterfly knife before the altercation, the knife was closed and clearly not being wielded in a threatening manner. The juvenile court identified minor and the other teenagers as the aggressors and found they never lost their status as aggressors during the duration of the fight. After considering the psychologist's testimony, the juvenile court found minor possessed the intent to kill when stabbing at Z.P. multiple times while he was restrained by one of the teenagers and successfully making contact with Z.P. twice—once in the abdomen and once in the neck.

Accordingly, the juvenile court sustained the allegation of attempted murder against minor. It also sustained two allegations of assault with force likely to cause great

3

bodily injury and one allegation of possession of a dirk or dagger. The court found true multiple weapons and great bodily injury allegations.

The dispositional report recommended the juvenile court set a baseline term of three years, given minor's year of confinement in the Shasta County Juvenile Rehabilitation Facility, but believed a baseline term of four years was also appropriate. The report indicated minor had been the victim of abuse, neglect, and other traumas from his childhood. While the report noted minor had engaged in juvenile services, it also noted 20 instances of rule violations. Minor argued for the court to set a baseline term of three years given his traumatic childhood and because minor had spent a year in confinement while maintaining relatively good behavior. The prosecution argued for the court to set a baseline term of five years because of the severity of the underlying crime and minor's lack of remorse. The juvenile court declared minor a ward of the court and set the baseline term of confinement at four years, later citing the circumstances of minor's offense and the need for him to take advantage of services and learn how to take responsibility for his actions.

Minor appeals.

## DISCUSSION

### I

*Sufficient Evidence Supports The Juvenile Court's*

*Finding Minor Acted With The Intent To Kill*

Minor contends insufficient evidence supports the juvenile court's finding he acted with the intent to kill and instead supports a finding he acted in unreasonable self-defense. Specifically, minor argues the video evidence supports an interpretation that Z.P. was the initial aggressor when he pushed minor's arm off his shoulders while holding a butterfly knife. Minor also argues the psychologist's testimony showed he lacked the ability to form the intent to kill. We disagree.

4

" 'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.] We determine 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citation.] In so doing, a reviewing court 'presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' " (*People v. Edwards* (2013) 57 Cal.4th 658, 715, italics omitted.) "Even when there is a significant amount of countervailing evidence, the testimony of a single witness that satisfies the standard is sufficient to uphold the finding." (*People v. Barnwell* (2007) 41 Cal.4th 1038, 1052.) When a crime requires proof of specific intent, " '[e]vidence of a defendant's state of mind is almost inevitably circumstantial, but circumstantial evidence is as sufficient as direct evidence to support a conviction.' " (*People v. Manibusan* (2013) 58 Cal.4th 40, 87.)

"Attempted murder requires the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing." (*People v. Lee* (2003) 31 Cal.4th 613, 623.) Attempted murder requires express malice; a conscious disregard for life will not suffice to support a conviction for attempted murder. (*People v. Bland* (2002) 28 Cal.4th 313, 327-328.) "Express malice requires a showing that the assailant ' " 'either desire[s] the result [i.e., death] or know[s], to a substantial certainty, that the result will occur.' " ' " (*People v. Smith* (2005) 37 Cal.4th 733, 739.) A defendant's intent to kill is rarely shown by direct evidence and may be inferred from the defendant's acts and all the circumstances. (*Id.* at p. 741.)

We reviewed the video evidence of the altercation and conclude it supports the juvenile court's interpretation the three teenagers, including minor, were the aggressors.

In the video, Z.P. is seen showing minor and another teenager something in his hand and they are looking down at it. Minor and the other teenager are then seen calmly talking to Z.P. before minor puts his arm around Z.P.'s shoulders. Z.P., as the juvenile court described, responds by removing minor's arm by pushing it off his body with his own hand. Z.P. was not posturing or demonstrating any aggressive facial expressions or body language when pushing off minor's unwanted touching. In response to being pushed off Z.P.'s shoulders, minor immediately punched Z.P. thereby starting the fist fight, and his two accomplices joined in the altercation by punching Z.P. This video corroborates Z.P.'s testimony that he pushed minor off his shoulder and Z.P.'s girlfriend's and her brother's testimony that the group of young adults appeared to be having a calm discussion. While minor may interpret the video as Z.P. being aggressive and a bystander testified Z.P. appeared to be the aggressor, this is of no consequence because we do not reweigh the evidence or determine credibility. (*People v. Manibusan*, *supra*, 58 Cal.4th at p. 87.) At bottom, the video evidence and several witnesses' testimony support the juvenile court's interpretation that minor was the aggressor. Thus, sufficient evidence supports the juvenile court's finding minor started the altercation.

Further, the evidence supports the juvenile court's finding minor could and did form the intent to kill. The psychologist testified minor was prone to react quickly and aggressively in stressful situations involving aggressive peers based on his brain development and results of various tests. The juvenile court stated it considered the psychologist's testimony. And, while the psychologist's testimony could support a finding minor did not appreciate with substantial certainty that his conduct could result in death, the juvenile court rejected this conclusion in favor of the video and testimonial evidence showing minor was not reacting to a stressful situation but created the stressful situation that he then escalated into an encounter involving deadly force.

In particular, the juvenile court pointed to the video evidence, which established minor was pushed away repeatedly and once to the ground but did not stop his assault

and instead decided to escalate his attack by pulling a knife and stabbing Z.P. in vital areas of his body while Z.P. was restrained by minor's accomplice. That minor's life-threatening conduct was preceded by his own aggressive conduct toward Z.P. undercuts the psychologist's testimony that minor's deadly conduct was his natural reaction to aggression and stress. Moreover, minor's multiple stabbings of vital areas of Z.P.'s body with a deadly weapon leads to the reasonable inference that minor knew with substantial certainty that his conduct could lead to death. (See *People v. Avila* (2009) 46 Cal.4th 680, 701-702 [evidence that the defendant "repeatedly attempted to stab [the victim], an unarmed and trapped victim, and succeeded in stabbing him in the arm and leg" was "alone . . . substantial evidence of [the] defendant's intent to kill"].)

That evidence may provide sufficient support for the finding that minor acted in unreasonable self-defense is irrelevant. Evidence often may support many reasonable conclusions. (*People v. Manibusan*, *supra*, 58 Cal.4th at p. 87.) The question before us is whether the evidence sufficiently supports the findings of the juvenile court. (*Ibid.*) As explained, sufficient evidence supports the juvenile court's finding minor acted with the intent to kill.

II

*The Juvenile Court Did Not Abuse Its Discretion*

*By Setting The Baseline Term Of Confinement At Four Years*

Minor argues the juvenile court abused its discretion by setting the baseline term at four years, instead of adopting the dispositional report's recommendation of three years based on minor's performance in custody over the course of a year, which could not be counted towards the baseline term. We disagree.

"[Welfare and Institutions Code s]ection 875, subdivision (b)(1), provides that the court must 'set a baseline term of confinement' that 'shall represent the time in custody necessary to meet the developmental and treatment needs of the ward and to prepare the ward for discharge.' " (*In re Jose R.* (2024) 102 Cal.App.5th 839, 846.) As mandated by

7

section 875, subdivision (b), the Judicial Council adopted a "matrix of offense-based classifications" that juvenile courts are now required to use in setting the baseline confinement term. (§ 875, subd. (h)(2); see Cal. Rules of Court, rule 5.806(d).) Pursuant to this matrix, the baseline term for minor's attempted murder offense ranges from three to five years. (Cal. Rules of Court, rule 5.806(d) [Category B(12)].) And in determining the appropriate baseline term within that range, the juvenile court must consider a nonexhaustive list of criteria "based on the individual facts and circumstances of the case." (Cal. Rules of Court, rule 5.806(b).) The list includes (1) the circumstances and gravity of the commitment offense, (2) the youth's prior history in the juvenile justice system, (3) the confinement time considered reasonable and necessary to achieve the rehabilitation of the youth, and (4) the youth's developmental history. (Cal. Rules of Court, rule 5.806(b)(1)-(4).)

We review the juvenile court's commitment decision for abuse of discretion, indulging all reasonable inferences in support of the juvenile court's decision. (*In re Angela M.* (2003) 111 Cal.App.4th 1392, 1396.) " ' "[D]iscretion is abused whenever the court exceeds the bounds of reason, all of the circumstances being considered." ' " (*In re Oscar A.* (2013) 217 Cal.App.4th 750, 755.) " 'A [juvenile] court [also] abuses its discretion when the factual findings critical to its decision find no support in the evidence.' " (*In re Khalid B.* (2015) 233 Cal.App.4th 1285, 1288.)

When selecting the baseline term of four years, the juvenile court indicated it read and considered the dispositional report, which contained an analysis of the required factors from the California Rules of Court. The juvenile court then pointed to the circumstances of minor's offense and the need for minor to engage in services impliedly as the factors justifying its selection of four years. Indeed, as the juvenile court observed, minor's attempted murder offense was egregious—not only did minor aim for vital areas of Z.P.'s body with a deadly weapon but took advantage of his accomplice restraining Z.P. to render him defenseless, making minor's assault even more life endangering.

8

Further, while minor had engaged in juvenile services for a year, which could weigh in favor of a shorter baseline term, the dispositional report indicated he had multiple rule violations during that time. Given minor's conduct while under juvenile jurisdiction and the circumstances of his offense, it was not arbitrary or lacking in factual support for the juvenile court to find four years was necessary to meet the developmental and treatment needs of minor to prepare him for eventual discharge. (See *In re Jose R.*, *supra*, 102 Cal.App.5th at p. 846.)

DISPOSITION

The dispositional order is affirmed.

/s/_____
ROBIE, Acting P. J.

We concur:

/s/_____
RENNER, J.

/s/_____
MESIWALA, J.